# EXHIBIT 4

**Execution Copy**

## SECURITY AGREEMENT

This Security Agreement, dated as of May 30, 2001 (as the same may be amended, "Security Agreement") is made by and among Todd Shaw, Inc., d/b/a "Too Short Records" ("Debtor"), Todd A. Shaw, p/k/a "Too Short") (the "Artist" and together with the Debtor, the "Grantors") and Zomba Recording Corporation, a New York corporation ("Secured Party").

## W I T N E S S E T H :

WHEREAS, the Grantors are parties to certain Publishing Agreements (as defined herein);

WHEREAS, Debtor is the Borrower under that certain Promissory Note dated May 30, 2001 in favor of Secured Party (as the same may be amended from time to time, the "Promissory Note"); and

WHEREAS, the Artist is the sole shareholder in the Debtor and will derive substantial benefits from the making of the loan evidenced by the Promissory Note (the "Loan") to Debtor;

WHEREAS, it is a condition precedent to the making of the Loan that Grantors shall have granted the Security Interests (as defined herein) contemplated by this Security Agreement;

NOW, THEREFORE, in consideration of the premises and in order to induce Secured Party to make the Loan, Grantors hereby agree with Secured Party for its benefit as follows:

SECTION 1.  Definitions

1.1    Certain Defined Terms.  The following terms, as used herein, have the meanings set forth below:

"Collateral" has the meaning assigned to that term in Section 2.

"Compositions" means collectively the musical compositions composed by Todd Shaw alone, or in collaboration with others, including without limitation the compositions listed on Schedule I hereto, all arrangements or portions thereof and all cues, titles, lyrics, libretti, music, musical scores, arrangements, adaptations, translations, annotations, and other versions thereof and all other works derived in whole or in part from the foregoing, whether claimed or registered as a musical composition or as part of a dramatico-musical work consisting of lyrics and/or music and all abridgements, condensations, revisions, interpolations, versions, collections, compilations and adaptations thereof, whether registered or unregistered, published or unpublished, and all underlying materials and derivatives of all of the foregoing in any form, medium or embodiment.

"Copyrights" means collectively all the following: (a) all copyrights, rights and interests in copyrights, works protectable by copyright, copyright registrations and copyright applications now owned or hereafter created or acquired by any Grantor; (b) all renewals and extensions of any of the foregoing; (c) all income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing, including, without limitation, damages or payments for past or future infringements of any of the foregoing; (d) the right to sue for past, present and future infringements of any of the foregoing; (e) all rights corresponding to any of the foregoing throughout the world; and (f) all goodwill associated with and symbolized by any of the foregoing.

"Copyright Security Agreement" means the copyright security agreement, substantially in the form of Exhibit A, which the Grantors shall execute and deliver to Secured Party in accordance with Section 5.5 of this Security Agreement with respect to any Copyrights (as such agreement may be amended, supplemented or otherwise modified from time to time).

"Event of Default" has the meaning assigned to such term in the Promissory Note.

"Loan Documents" means the Security Agreement, the Copyright Security Agreement, the Trademark Security Agreement, and the Promissory Note.

"Proceeds" means all proceeds of, and all other profits or receipts, in whatever form, arising from the sale, assignment, licensing or other disposition of, or realization upon, any Collateral including, without limitation, all claims of a Grantor against third parties with respect to any Collateral, whether now existing or hereafter arising and any other value received as a consequence of the possession of any Collateral.

"Recording Agreement" means the agreement relating to the furnishing of exclusive recording services of Artist, by and between Secured Party and Debtor dated as of May 1, 1997, as amended.

"Secured Obligations" has the meaning assigned to that term in Section 3.

"Security Interests" means the security interests granted pursuant to Section 2, as well as all other security interests created or assigned by the Grantors as additional security for the Secured Obligations pursuant to the provisions of this Security Agreement.

"Trademark Rights" means (a) all rights, title and interest in and to the name "Too Short" and all trademarks, logos and goodwill associated therewith, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all

-2-

applications in connection therewith, whether in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof; (b) all renewals and extensions of any of the foregoing; (c) all income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing, including, without limitation, damages or payments for past or future infringements of any of the foregoing; (d) the right to sue for past, present and future infringements of any of the foregoing; (e) all rights corresponding to any of the foregoing throughout the world; and (f) all goodwill associated with and symbolized by any of the foregoing.

"Trademark Security Agreement" means the trademark security agreement, substantially in the form of Exhibit B, which the Grantors shall exclude and deliver to Secured Party in accordance with Section 5.5 of this Security Agreement with respect to the Trademark Rights (as such agreement may be amended, supplemented or otherwise modified from time to time).

"UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of New York, as amended from time to time, and any successor statute; provided that if by reason of mandatory provisions of law, the validity, perfection or the effect of perfection or non-perfection of the Security Interest in any Collateral is governed by the Uniform Commercial Code as in effect on or after the date hereof in any other jurisdiction, "UCC" means the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provision hereof relating to such perfection of effect of perfection or non-perfection.

"Works" has the meaning assigned to that term in Section 2.

1.2    Other Definition Provisions. References to "Sections", "subsections", "Exhibits" and "Schedules" shall be to Sections, subsections, Exhibits and Schedules, respectively, of this Security Agreement unless otherwise specifically provided. Any of the terms defined in subsection 1.1 may, unless the context otherwise requires, be used in the singular or the plural depending on the reference. All references to statutes and related regulations shall include any amendments of same and any successor statutes and regulations.

SECTION 2.  Grant of Security Interests

In order to secure the prompt and complete payment, performance and observance of the Secured Obligations in accordance with the terms hereof, and to induce Secured Party to make the Loan, each Grantor hereby grants to Secured Party a continuing security interest in all right, title and interest of such Grantor in, to and under the following property, whether now owned or existing or hereafter acquired or arising and regardless of where located (all being collectively referred to as the "Collateral"):

-3-

(A)     All accounts receivable due from Secured Party to such Grantor pursuant to the Recording Agreement;

(B)     All accounts receivable due from Zomba Enterprises, Inc. ("ZEI") to such Grantor under (i) that certain Co-Publishing Agreement dated as of February 2, 1988 by and among ZEI and Willesden Music Inc. and Randy Austin and Todd Shaw d/b/a SRAND MUSIC (BMI), (ii) that certain Co-Publishing Agreement, dated as of April 1, 1994 by and between ZEI and Dangerous Music, Inc. f/s/o Todd Shaw p/k/a "Too Short" and (iii) any other music publishing administration or other similar agreement covering the songwriting/publishing services of Artist or any entity pursuant to or through which Artist is now conducting or has previously conducted business (in each case as amended from time to time, the "Publishing Agreements");

(C)     The Compositions that are subject to the Publishing Agreements (including but not limited to the Copyrights in the Compositions listed on Schedule I hereto) now owned or hereafter created or acquired by the Grantors (collectively, the "Works");

(D)     The Copyrights in, and all like or different rights relating to, the Works throughout the universe for the full term thereof (and any renewals and/or extensions of the term or terms of copyright in the Works, whether such rights are vested, contingent or reversionary under any copyright law now or hereinafter in force or effect in the United States or in any other country throughout the world), along with such Grantor's other rights in the Works of any nature, whether or not now known, and any legal, beneficial or equitable right to the use or ownership of the Works in any and all fields of use now or hereafter existing throughout the universe, by any means of technology now known or hereafter developed, including but not limited to the rights to reproduce, adapt, transform, derive, distribute, perform, record, and to otherwise exploit the Works and create and exploit all derivative works based on the Works in any medium, now owned or hereafter developed, and to authorize others to do any or all of the foregoing;

(E)     The Trademark Rights;

(F)     Any and all agreements, assignments, licenses and other documents of whatsoever kind or nature, heretofore or hereafter made or executed which relate to the Works, the Copyrights in and/or relating to the Works or the Trademark Rights or any rights therein;

-4-

(G)     All causes of action, including those for infringement, arising from the date of creation of each such Work, whether now known or unknown to any Grantor or Secured Party, and, upon an Event of Default under either the Promissory Note, the right to institute actions or proceedings in the Secured Party's own name; and

(H)     All Proceeds of the foregoing payable to such Grantor.

### SECTION 3.  Security for Obligations

This Security Agreement secures the prompt and complete payment of all present and future indebtedness, obligations and liabilities arising under or relating to the Loan Documents, and all other obligations of the Grantors now or hereafter existing under the Loan Documents and all renewals, extensions, restructurings and refinancings of any of the above (all such debts, obligations and liabilities of the Grantors collectively referred to herein as the "Secured Obligations").

### SECTION 4.  Representations and Warranties

In order to induce Secured Party to enter into this Security Agreement, the Grantors, jointly and severally, represent and warrant to Secured Party that the following statements are and will be at all times, true, correct and complete:

4.1     Binding Obligation.  The Loan Documents are legally valid and binding obligations of each Grantor, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws affecting the rights of creditors generally or general principles of equity.

4.2     Ownership of Collateral.  Except as otherwise provided in the Publishing Agreements, Debtor or Artist is the sole owner of each item of Collateral, having good and marketable title thereto free and clear of all liens and encumbrances. No effective copyright assignment, financing statement or other form of lien notice covering all or any part of the Collateral is on file in any recording office, except for those in favor of Secured Party.

4.3     Office Location/Residence.  The chief place of business, the chief executive office and the office where Debtor keeps its books and records are located at the places specified on Schedule II.  The Debtor is incorporated under the laws of the state of Georgia.  The chief place of business, the chief executive office and the residence of the Artist is located in the state of Georgia.

4.4 <u>Perfection</u>. Secured Party has a valid, perfected security interest in the Collateral, securing the payment of the Secured Obligations, and all filings and other actions necessary or desirable to perfect and protect such security interest have been duly taken.

4.5 <u>Governmental Authorizations</u>. No authorization, approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either (a) for the grant by either Grantor of the Security Interests granted hereby or for the execution, delivery or performance of this Security Agreement by such Grantor or (b) for the perfection of or the exercise by Secured Party of its rights and remedies hereunder.

SECTION 5. <u>Further Assurances: Covenants</u>

5.1 <u>Other Documents and Actions</u>. Each Grantor will, from time to time, at its expense, promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable, or that Secured Party may reasonably request, in order to perfect and protect any Security Interests granted or purported to be granted hereby or to enable Secured Party to exercise and enforce its rights and remedies hereunder, with respect to any Collateral or to carry out the provisions and purposes hereof. Without limiting the generality of the foregoing, each Grantor will, in each case at its own cost and expense: (a) execute and file such copyright assignments, financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable, or as Secured Party may request, in order to perfect and preserve the Security Interests granted or purported to be granted hereby; (b) at any reasonable time, upon demand by Secured Party exhibit the Collateral to allow inspection of the Collateral by Secured Party or persons designated by Secured Party; (c) take any and all actions reasonably necessary to defend Secured Party's Security Interests in the Collateral and the priority thereof; and (d) at all times to keep in all material respects accurate and complete accounting records with respect to the Collateral, including, but not limited to, a record of all payments and Proceeds received.

5.2 <u>Secured Party Authorized</u>. Each Grantor hereby authorizes Secured Party to file one or more copyright assignments, trademark assignments, financing or continuation statements, and amendments thereto (or similar documents required by any laws of any applicable jurisdiction), relating to all or any part of the Collateral without the signature of such Grantor where permitted by law.

5.3 <u>Corporate or Name Change</u>. Debtor will notify Secured Party promptly of any change in Debtor's name, identity or corporate structure. Artist will notify Secured Party promptly of any change in the Artist's name.

5.4     Business Locations. Each Grantor will give Secured Party thirty (30) days prior notice of any change in its chief place of business or place of residence, as applicable.

5.5     Recordation Covenants. Each Grantor shall concurrently herewith deliver to Secured Party all documents, instruments and items as may be necessary for Secured Party to file this Security Agreement or a shortened form thereof with the United States Copyright Office, the United States Patent and Trademark Office (the "PTO") and any similar domestic or foreign office, department or agency. If, after the date hereof, any Grantor shall acquire any Copyrights or Trademark Rights, such Grantor shall execute and deliver to Secured Party the Copyright Security Agreement or Trademark Security Agreement, as the case may be, and all other documents, instruments and items as may be necessary for Secured Party to file such agreement with the United States Copyright Office or the PTO and any similar domestic or foreign office, department or agency. Each Grantor shall (a) prosecute diligently any copyright or trademark application at any time pending; (b) make application on all new Copyrights as reasonably deemed appropriate by such Grantor; (c) preserve and maintain all rights in the Copyrights and Trademark Rights; (d) upon the written request of the Secured Party, use its best efforts to obtain any necessary consents of third parties to the grant or perfection of a security interest in favor of the Secured Party with respect to any Copyrights and Trademark Rights; (e) promptly, following its becoming aware thereof, notify the Secured Party of any event which materially adversely affects the value of any Copyrights or Trademark Rights or the ability of Secured Party to exercise any rights with respect to any Copyrights or Trademark Rights; and (f) upon and after the occurrence of an Event of Default under the Promissory Note, use its best efforts to obtain any consents, waivers or agreements necessary to enable Secured Party to exercise its remedies with respect to the Copyrights or Trademark Rights. No Grantor shall abandon any right to file a copyright application or trademark application nor shall any Grantor abandon any pending copyright application or trademark application or Copyright or Trademark Right without the prior written consent of Secured Party. No Grantor shall enter into any agreement which would or might in any way impair or conflict with such Grantor's obligations under this subsection 5.5 or prevent the creation, continuation or perfection of the security interest granted in respect of such Grantor's Copyrights or Trademark Rights. The Grantors represent and warrant to Secured Party that the execution, delivery and performance of this Security Agreement by the Grantors will not violate or cause a default under any of the Copyrights, Trademark Rights or any agreement in connection therewith.

5.6     Taxes and Claims. Each Grantor will pay promptly when due all property and other taxes, assessments and governmental charges or levies imposed upon, and all claims against, the Collateral (including claims for labor, materials and supplies), except to the extent the validity thereof is being contested in good faith and provided that no notice of lien has been filed or recorded with respect thereto. At its option, the Secured Party may discharge past due taxes, liens, security interests or other

encumbrances at any time levied or placed on the Collateral, and may pay for the maintenance and preservation of the Collateral to the extent any Grantor fails to do so, and the Grantors agree to reimburse the Secured Party on demand for any payment made or any expense incurred by it pursuant to the foregoing authorization; provided, however, that nothing in this Section 5.6 shall be interpreted as excusing any Grantor from the performance of any covenants or other promises with respect to taxes, liens, security interests or other encumbrances and maintenances as set forth herein or in any other related document.

      5.7    Collateral Description. Each Grantor will furnish to Secured Party, from time to time, statements and schedules further identifying and describing the Collateral and such other reports or information in connection with the Collateral as Secured Party may reasonably request, all in reasonable detail.

      5.8    Continuing Obligations of the Grantors. Each Grantor shall remain liable to observe and perform all the conditions and obligations to be observed and performed by it under each contract, agreement, interest or obligation relating to the Collateral, all in accordance with the terms and conditions thereof.

SECTION 6. Secured Party Appointed Attorney-in-Fact

Following (a) the failure by any Grantor to, within 10 days of Secured Party's request execute and deliver any instruments or documents or take any action requested by Secured Party pursuant to Section 5.1 hereof or (b) the occurrence and during the continuance of an Event of Default each Grantor hereby irrevocably appoints Secured Party as such Grantor's attorney-in-fact, with full authority in the place and stead of such Grantor and in the name of such Grantor, Secured Party or otherwise, from time to time, in Secured Party's discretion to take any action and to execute any instrument that Secured Party may deem necessary or advisable to accomplish the purposes of this Security Agreement, including, without limitation:

      (a)    to ask, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

      (b)    to file any claims or take any action or institute any proceedings that Secured Party may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Secured Party with respect to any of the Collateral;

      (c)    to pay or discharge taxes or liens, levied or placed upon or threatened against the Collateral, the legality or validity thereof and the amounts necessary to discharge the same to be determined by

Secured Party in its sole discretion, and such payments made by Secured Party to become obligations of the Grantors to Secured Party, due and payable immediately without demand; and

(d)     generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though Secured Party were the absolute owner thereof for all purposes, and to do, at Secured Party's option and at such Grantor's expense, at any time or from time to time, all acts and things that Secured Party deems necessary to protect, preserve or realize upon the Collateral including, the execution and filing of financial statements or other documents.

Each Grantor hereby ratifies and approves all acts of Secured Party made or taken pursuant to this Section 6. Neither Secured Party nor any person designated by Secured Party shall be liable for any acts or omissions (other than any thereof which constitute gross negligence or willful misconduct of Secured Party or such Person designated by Secured Party) or for any error of judgment or mistake of fact or law. The power granted pursuant to this Section 6, is coupled with an interest and is irrevocable so long as this Security Agreement shall remain in force.

SECTION 7.  Transfers and Other Liens

Except as otherwise permitted herein, or in the Publishing Agreements, no Grantor shall:

(a)     sell, assign (by operation of law or otherwise) or otherwise dispose of, or grant any option with respect to, any of the Collateral; or

(b)     create or suffer to exist any lien, security interest or other charge or encumbrance upon or with respect to any of the Collateral to secure indebtedness of any person except for the security interest created by this Security Agreement.

SECTION 8.  Remedies

If any Event of Default shall have occurred and be continuing, Secured Party may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral) and also may (a) require the Grantors to, and each Grantor hereby agrees that it will, at its expense and upon request of Secured Party forthwith, assemble all or part of the Collateral as directed by Secured Party and make it available to Secured Party at a

place to be designated by Secured Party which is reasonably convenient to both parties; and (b) without notice except as specified below, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Secured Party's offices or elsewhere, at such time or times, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as Secured Party may deem commercially reasonable. Each such purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of the Grantors.

The Grantors agree that, to the extent notice of sale shall be required by law, at least ten days notice to such Grantor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. At any sale of the Collateral, if permitted by law, Secured Party may bid (which bid may be, in whole or in part, in the form of cancellation of indebtedness) for the purchase of the Collateral or any portion thereof for Secured Party. Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Secured Party may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. To the extent permitted by law, each Grantor hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter enacted.

### SECTION 9.  License of Works

Each Grantor hereby assigns, transfers and conveys to Secured Party, effective upon the occurrence of any Event of Default, the exclusive right and license to use all Works owned or used by such Grantor together with any goodwill associated therewith, all to the extent necessary to enable Secured Party to realize on the Collateral and any successor or assign to enjoy the benefits of the Collateral. This right and license shall inure to the benefit of all successors, assigns and transferees of Secured Party and its successors, assigns and transferees, whether by voluntary conveyance, operation of law, assignment, transfer, foreclosure, deed in lieu of foreclosure or otherwise. Such right and license is granted free of charge, without requirement that any monetary payment whatsoever be made to such Grantor by Secured Party.

### SECTION 10.  Application of Proceeds

Following the occurrence and during the continuance of an Event of Default, the proceeds of any sale of, or other realization upon, all or any part of the Collateral shall be applied: first, to all fees, costs and expenses incurred by Secured Party with respect to the Loan Documents or the Collateral; second, to any other fees due and owing to Secured Party; and third, to any other indebtedness or obligations of the Grantors owing to Secured Party.

SECTION 11.  <u>Expenses</u>

The Grantors shall pay all costs, fees and expenses of perfecting and maintaining the Security Interests, and with respect to the sale or other disposition thereof.  If any Grantor fails to promptly pay any portion of the above expenses when due (unless such Grantor is contesting the same in good faith and by appropriate proceedings and the non-payment of the same does not result in any risk of loss or forfeiture of, or any subordination or loss of any lien on, the Collateral or any part thereof) or to perform any other obligation of such Grantor under this Security Agreement, Secured Party may, at its option, but shall not be required to, pay or perform the same and charge for all costs and expenses incurred therefor, and such Grantor agrees to reimburse Secured Party therefor on demand.  All sums so paid or incurred by Secured Party for any of the foregoing, any and all other sums for which any Grantor may become liable hereunder and all costs and expenses (including reasonable attorneys' fees, legal expenses and court costs) incurred by Secured Party in enforcing or protecting the Security Interests or any of Secured Party's rights or remedies under this Security Agreement shall be payable on demand, shall bear interest until paid at the highest rate provided in the Promissory Note and shall be secured by the Collateral.

SECTION 12.  <u>Termination of Security Interests;
Release of Collateral</u>

Upon the indefeasible payment in full, in cash of all Secured Obligations, the Security Interests shall terminate and, subject to the Publishing Agreements, all rights to the Collateral created by this Security Agreement shall revert to the applicable Grantor.  Upon such termination of the Security Interests or release of any Collateral, Secured Party will, at the expense of the Grantor, execute and deliver to such Grantor such documents as such Grantor shall reasonably request to evidence the termination of the Security Interests or the release of such Collateral, as the case may be.

SECTION 13.  <u>Reinstatement</u>

This Security Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against any Grantor for liquidation or reorganization, should any Grantor become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of any Grantor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Secured Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Secured Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Secured Obligations shall be reinstated and

-11-

deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

### SECTION 14.  Notices

All notices, approvals, requests, demands and other communications hereunder shall be in writing and shall be given by hand or by prepaid registered or certified mail, return receipt requested, at the respective addresses set forth below, or at such other address as may be designated by either party pursuant to the provisions hereof. Such notice or other communication shall be deemed given when delivered, if given by hand, and when sent, if mailed.

TO DEBTOR:

> Todd Shaw Inc. d/b/a "Too Short Records"
> 3060 Peachtree Road, Suite 1420
> Atlanta, Georgia 30305

With a copy to:

> Jeffrey Worob, Esq.
> Davis, Shapiro & Lewit
> 689 Fifth Avenue, 5th Floor
> New York, New York 10022

TO ARTIST:

> Todd A. Shaw
> 1010 Forest Overlook Drive
> Atlanta, Georgia 30331

With a copy to:

> Jeffrey Worob, Esq.
> Davis, Shapiro & Lewit
> 689 Fifth Avenue, 5th Floor
> New York, New York 10022

TO SECURED PARTY:

> Zomba Recording Corporation
> 137-139 W. 25th Street

New York, NY  10001
Attention:  Senior Vice President of
Business Affairs

With a copy to:

Leigh P. Ryan, Esq.
Paul, Hastings, Janofsky & Walker LLP
Thirty-First Floor
399 Park Avenue
New York, NY 10022

## SECTION 15.  Waivers. Non-Exclusive Remedies

No failure on the part of Secured Party to exercise, and no delay in
exercising and no course of dealing with respect to, any power, privilege or right under
any of the Loan Documents shall operate as a waiver thereof; nor shall any single or
partial exercise by Secured Party of any power, privilege or right under any of the Loan
Documents preclude any other or further exercise thereof or the exercise of any other
power, privilege or right.  The powers, privileges and rights in the Loan Documents are
cumulative and are not exclusive of any other remedies provided by law.

## SECTION 16.  Successors and Assigns

This Security Agreement is for the benefit of Secured Party and its
successors and assigns, and in the event of an assignment of all or any of the Secured
Obligations, the rights hereunder, to the extent applicable to the Secured Obligations so
assigned, may be transferred with such Secured Obligations.  This Security Agreement
shall be binding on the Grantors and their respective successors and assigns.  The
Grantors shall not be permitted to assign this Agreement or any interest herein or in the
Collateral, or any part thereof, or any cash or property held by the Secured Party as
Collateral under this Agreement, without the consent of the Secured Party.

## SECTION 17.  Changes in Writing

No amendment, modification, termination or waiver of any provision of
this Security Agreement or consent to any departure by any Grantor therefrom, shall in
any event be effective without the written concurrence of Secured Party and such Grantor.

## SECTION 18.  APPLICABLE LAW

THIS SECURITY AGREEMENT SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES; EXCEPT TO THE EXTENT THAT THE VALIDITY OR PERFECTION OF THE SECURITY INTEREST HEREUNDER, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

### SECTION 19.  Failure or Indulgence Not Waiver; Remedies Cumulative

No forbearance, failure or delay on the part of Secured Party in the exercise of any power, right or privilege hereunder shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or any other right, power or privilege.  All rights and remedies existing under this Security Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

### SECTION 20.  Headings

Section and subsection headings in this Security Agreement are included herein for convenience of reference only and shall not constitute a part of this Security Agreement for any other purpose or be given any substantive effect.

### SECTION 21.  Counterparts

This Security Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Security Agreement by signing any such counterpart.

### SECTION 22.  Waiver of Jury Trial

EACH GRANTOR HEREBY WAIVES ITS RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY THE SECURED PARTY AGAINST SUCH GRANTOR OR ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS OR OTHERWISE. EACH GRANTOR AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.

WITHOUT LIMITING THE FOREGOING, EACH GRANTOR FURTHER AGREES THAT ITS RIGHTS TO A TRIAL BY JURY ARE WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS. EACH GRANTOR HEREBY ACKNOWLEDGES THAT IT HAS HAD THE ASSISTANCE OF COUNSEL IN THE REVIEW AND EXECUTION OF THIS AGREEMENT AND THAT THE MEANING AND EFFECT OF THE FOREGOING WAIVER OF JURY TRIAL HAS BEEN FULLY EXPLAINED TO SUCH GRANTOR BY SUCH COUNSEL.

SECTION 23.  Submission to Jurisdiction

Any legal action or proceeding with respect to this Security Agreement or any document related hereto may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York, and, by execution and delivery of this Agreement, each Grantor hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. Each Grantor hereby irrevocably waives, in connection with any such action or proceeding, any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions. Nothing herein shall affect the right of the Secured Party to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Grantors in any other jurisdiction.

SECTION 24.  Security Interest Absolute

All rights of the Secured Party hereunder, the Security Interest, and all obligations of the Grantors hereunder, shall be absolute and unconditional irrespective of (i) any lack of validity or enforceability of the Loan Documents, any other agreement with respect to any of the Secured Obligations or any other agreement or instrument relating to any of the foregoing, (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other amendment or waiver of or consent to any departure from the Loan Documents or any other agreement or instrument, (iii) any exchange, release or nonperfection of any other Collateral, or any release or amendment or waiver of or consent to or departure from any guarantee, for all or any of the Secured Obligations, or (iv) any other circumstance which might otherwise constitute a defense available to, or discharge of, any Grantor in respect of the Secured Obligations or in respect of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Witness the due execution hereof by the respective duly authorized officers (or individual, as the case may be) of the undersigned as of the day first above written.

ZOMBA RECORDING CORPORATION

By: _____

Title: _Daniel Zucker, senior vice President_

Todd Shaw, Inc.
d/b/a "Too Short Records"

By: _____

Title: _Todd Shaw, Chief Executive Officer_

_____

Todd A. Shaw
p/k/a "Too Short"

-17-

SCHEDULE I

COMPOSITIONS

Srand Music

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| Ain't Nothin' But A Word To Me | PA-954-848 | 8/17/99 |
| Ain't Nothing Like Pimpin' | PA-942-254 | 5/3/99 |
| Alias Crazy Rak | PA-443-668 | 10/10/89 |
| All About It | | |
| All My Bitches Are Gone | PA-734-866 | 11/14/94 |
| Bad Ways | PA-943-330 | 5/11/99 |
| Big Thangs | PA-945-526 | 4/14/99 |
| Blowjob Betty | PA-734-867 | 11/14/94 |
| Buy You Some | PA-943-846 | 5/12/99 |
| Buy You Some (Feat. Erick Sermon/MC Breed/Kool Ace) | PA-943-333 | 5/11/99 |
| Call Me | | |
| Can I Get A Bitch | PA-942-256 | 5/3/99 |
| Can't Stop a/k/a Don't Stop Rappin' | | |
| Check Yourself | PA-953-015 | 6/17/99 |
| City Of Dope | PA-440-358 | 10/10/89 |
| Clownin' Wit Da Crew | PA-734-825 | 11/14/94 |
| Cocktales | PA-942-255 | 5/3/99 |
| Coming Up Short | PA-942-257 | 5/3/99 |
| Couldn't Be A Better Player | | |
| Cusswords | PA-440-357 | 10/10/89 |
| The Dangerous Crew | PA-734-868 | 11/14/94 |
| Dead Or Alive | PA-954-849 | 8/17/99 |
| Devil Without A Cause | income participation | |
| Don't Fight The Feeling | PA-440-356 | 10/10/89 |
| Don't Fight The Intro | PA-734-863 | 11/14/94 |
| Don't Fuck For Free | PA-942-275 | 5/3/99 |
| Dope Fiend Beat | PA-951-366 | 8/17/99 |
| Extra Dangerous Thanks | PA-943-294 | 5/11/99 |
| Freaky Tales | PA-962-157 | 6/15/99 |
| From The Ground Up | PA-942-410 | 5/11/99 |
| Fuck Faces | PA-951-093 | 6/15/99 |
| Fuck My Car | PA-943-331 | 5/11/99 |
| Fuckin' Wit Banks | PA-942-322 | 5/11/99 |
| Funk Session | PA-943-852 | 5/12/99 |
| Game | PA-942-273 | 5/3/99 |
| The Game Is Sold Not Told | PA-800-338 | 1/3/96 |
| Gangstas And Players | | |
| Gas Chamber | PA-940-426 | 3/23/99 |
| Get All Your Change | | |
| Get In Where You Fit In | PA-734-869 | 11/14/99 |
| Get Your Hustle On | | |
| Gettin' It | PA-943-327 | 5/11/99 |
| Gettin' It (Remix) | PA-945-837 | 5/17/99 |
| The Ghetto | income participation | |
| Giving Up The Funk | PA-942-270 | 5/3/99 |
| Hard On The Boulevard | PA-954-850 | 8/17/99 |
| Hit The Highway | PA-962-478 | 7/21/99 |

Tooshort/catalog acquisition/too short schedule

Srand Music

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| Hoes | PA-943-288 | 5/11/99 |
| Hoochie | PA-943-290 | 5/11/99 |
| I Ain't Nothin' But A Dog | PA-943-287 | 5/11/99 |
| I Ain't Trippin' | PA-440-353 | 10/10/89 |
| I Must Confess | PA-943-338 | 5/11/99 |
| I Want To Be Free (That's The Truth) | PA-943-289 | 5/11/99 |
| I'm A Player (Album/Street/Radio Versions) | PA-734-862 | 11/14/94 |
| I'm A Player (Street Remix/Radio Remix) | PA-644-794 | 11/10/94 |
| In The Oaktown | PA-954-851 | 8/17/99 |
| In The Trunk | PA-943-286 | 5/11/99 |
| Independence Day | | |
| It Don't Stop | PA-943-292 | 5/11/99 |
| It's A Cold Day (The Funk Wit U Mix) | PA-945-835 | 4/27/99 |
| It's All Good | PA-734-864 | 11/14/94 |
| It's Alright | PA-966-034 | 3/30/99 |
| It's Your Life | PA-954-852 | 8/17/99 |
| Jazzy Hoes | PA-937-817 | 3/9/99 |
| Just Another Day | PA-734-865 | 11/14/99 |
| Keep It Real | | |
| Leave It Alone | PA-943-842 | 5/12/99 |
| Life Is...Too Short | PA-443-687 | 10/10/89 |
| Little Girls | PA-951-367 | 8/17/99 |
| Livin' That Life | | |
| The Loot | PA-734-828 | 11/14/94 |
| Love Jones | | |
| Mack Attack | PA-951-368 | 8/17/99 |
| Money In The Ghetto | | |
| Nasty Rhymes | PA-943-336 | 5/11/99 |
| Never Talk Down | PA-943-337 | 5/11/99 |
| No Love From Oakland | PA-972-121 | 11/5/99 |
| Nobody Does It Better | PA-440-354 | 10/10/89 |
| Oakland | PA-440-355 | 10/10/89 |
| Only Out To Fuck | PA-945-907 | 5/21/99 |
| Paper Chase | | |
| Partytime | PA-951-369 | 8/17/99 |
| Paula And Janet | PA-954-853 | 8/17/99 |
| Paystyle | PA-942-269 | 5/3/99 |
| Pimp Me | PA-943-334 | 5/11/99 |
| Pimp The Ho | PA-440-351 | 10/10/89 |
| Pimpin' In Da South | | |
| Pimpology | PA-954-854 | 8/17/99 |
| Playboy Short | PA-964-927 | 9/8/99 |
| Playboy Short II | PA-951-370 | 8/17/99 |
| Punk Bitch | PA-954-855 | 8/17/99 |
| Racia | PA-660-383 | 6/14/99 |
| Rap Like Me | PA-954-856 | 8/17/99 |
| Rapper's Ball | PA-948-330 | 5/18/99 |

Tooshort/catalog acquisition/too short schedule

Srand Music

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| Rapper's Ball (Traxster Remix) | | |
| Real Niggaz | PA-890-685 | 4/23/98 |
| Recognize Game | | |
| Rhymes | PA-440-352 | 10/10/89 |
| Ride Wit' Us | | |
| Sample The Funk | PA-942-274 | 5/3/99 |
| The Shit That Will Fuck With Your Brain Boy | PA-940-777 | 4/27/99 |
| Short Dog – Hit 'Em Up | | |
| Short Dog's In The House | PA-954-858 | 8/17/99 |
| Smoke 'Em Like A Blunt | PA-940-434 | 3/23/99 |
| So Watcha Sayin' | PA-943-339 | 5/11/99 |
| So You Want To Be A Gangster | PA-943-293 | 5/11/99 |
| Something To Ride To | | |
| Step Daddy | PA-943-291 | 5/11/99 |
| Survivin' The Game | PA-943-328 | 5/11/99 |
| Take My Bitch | PA-943-332 | 5/11/99 |
| Tell The Feds | PA-997-836 | 3/16/99 |
| Thangs Change | PA-942-258 | 5/3/99 |
| That's Why | PA-943-329 | 5/11/99 |
| To Da Beat | PA-942-413 | 5/11/99 |
| Trouble (Scared To Blast) | PA-943-845 | 5/12/99 |
| True Worldwide Playaz | PA-950-122 | 6/8/99 |
| The Universal Mix | PA-951-371 | 8/17/99 |
| We Do This | PA-942-272 | 5/3/99 |
| What Rap | | |
| Where I'm From | income participation | |
| Where I'm From (Don't Fight The Remix) | income participation | |
| The World Is Filled | | |
| You Know What I Mean | PA-951-372 | 8/17/99 |
| You Thought | PA-953-014 | 6/17/99 |
| Your Sister | PA-976-645 | 11/30/99 |
| 2 Kill A G | PA-734-822 | 11/14/94 |
| 4 Tha Hustlas | PA-945-522 | 4/14/99 |

## T. Shaw LLC

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| All The Time | | |
| Ain't No Bitches | | |
| Anything Is Possible | | |
| Be My Dirty Love | | |
| Call Me Daddy | | |
| Can't Stay Away | | |
| Don't Hate The Player | | |
| First Night | | |
| Funkin' Over Nuthin' Pt. 1 | | |
| Funkin' Over Nuthin' Pt. 2 | | |
| Get Your Hustle On | | |
| Good Life | | |
| Here We Go | | |
| Here We Go (Remix) | | |
| How Does It Feel | | |
| Invasion Of The Flat Booty Bitches | | |
| It's About That Money | | |
| Just Like Dope | | |
| Keep Paging Me | | |
| Longevity | | |
| Make Money, Money | | |
| More Freaky Tales | | |
| Nation Riders Anthem | | |
| Old School | | |
| Pimp Shit | | |
| Recognize Game | | |
| Sex Me The Way You Dance | | |
| She Know | | |
| Still Strugglin' | | |
| Suckas Do What They Can (Real Playaz) | | |
| Tell The Feds | | |
| What Happened To The Groupies | | |
| Where They At? | | |
| You Might Get G'eed | | |
| You Nasty | | |
| 2 Bitches a/k/a 2 Women | | |

## Dangerous Music

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| Ain't Nothing Like Pimpin' | PA-942-254 | 5/3/99 |
| Blowjob Betty | PA-734-867 | 11/14/94 |
| Buy You Some | PA-943-846 | 5/12/99 |
| Buy You Some (Feat. Erick Sermon/MC Breed/Kool Ace) | PA-943-333 | 5/11/99 |
| Call Me | | |
| Clownin' Wit Da Crew | PA-734-825 | 11/14/94 |
| Coming Up Short | PA-942-257 | 5/3/99 |
| The Dangerous Crew | PA-734-868 | 11/14/94 |
| Don't Try This At Home | PA-943-854 | 5/12/99 |
| Extra Dangerous Thanks | PA-942-294 | 5/11/99 |
| Freddy B | PA-943-848 | 5/12/99 |
| Fuckin' Wit Banks | PA-942-322 | 5/11/99 |
| Funk Session | PA-943-852 | 5/12/99 |
| The Game Is Sold Not Told | PA-800-338 | 1/3/96 |
| Get In Where You Fit In | PA-734-869 | 11/14/99 |
| Gettin' It | PA-943-327 | 5/11/99 |
| Gettin' It (Remix) | PA-945-837 | 5/17/99 |
| Giving Up The Funk | PA-942-270 | 5/3/99 |
| Gone With The Wind | PA-943-844 | 5/12/99 |
| I Must Confess | PA-943-338 | 5/11/99 |
| In The Trunk | PA-943-286 | 5/11/99 |
| It Don't Stop | PA-943-292 | 5/11/99 |
| It's A Cold Day (The Funk Wit U Mix) | PA-945-835 | 4/27/99 |
| It's All Good | PA-734-864 | 11/14/94 |
| Joe Riz | PA-943-847 | 5/12/99 |
| Leave It Alone | PA-943-842 | 5/12/99 |
| Let 'Em Know | | |
| Never Talk Down | PA-943-336 | 5/11/99 |
| Only Out To Fuck | PA-945907 | 5/21/99 |
| Out For The Props | PA-943-858 | 5/12/99 |
| Paystyle | PA-942-269 | 5/3/99 |
| Pimp Me | PA-943-334 | 5/11/99 |
| Pimpin's Just In Me | PA-943-855 | 5/12/99 |
| Rumors | PA-943-857 | 5/12/99 |
| Rumors (Jealous A. Remix) | PA-970-144 | 10/19/99 |
| Thangs Change | PA-942-258 | 5/3/99 |
| We Do This | PA-942-272 | 5/3/99 |
| Weed Break | PA-943-853 | 5/12/99 |
| Welcome To The Bay | PA-943-843 | 5/12/99 |
| You Crossed Me | PA-943-850 | 5/12/99 |
| 2 Kill A G | PA-734-822 | 11/14/94 |

## Dopefiend Music/Dopefiend Beats

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| Abstract Hustle | | |
| All 4 Keeps | | |
| Are You Ready For This | | |
| At Cha Neck | | |
| Bounce, Rock, Skate, Roll | | |
| Can't Stay Away | | |
| County Line | | |
| Crazy World | | |
| Don't Lie To Kick It | | |
| Don't Trust Her | | |
| First Night | | |
| G-2000 | | |
| Get All Your Change | | |
| Gettin' Paid | | |
| Gimme Mine | | |
| Hellbound | | |
| Here's A Letter | | |
| Holding On To You | | |
| How It Got So Bad | | |
| I Ain't Gonna Forget This | | |
| I'm A Player Bitch | | |
| If I Wasn't High | | |
| In Jail | | |
| It's Goin' Down | | |
| Jackin' Rich Rappers | | |
| Keep Walkin' | | |
| Killa Team | | |
| Lady Luv | | |
| Live In The Blue Basement | | |
| Love Jones | | |
| Make Money, Money | | |
| Nation Riders | | |
| Never Change | | |
| No Fear | | |
| One Live To Live | | |
| One Time Shot | | |
| Out Of Control | | |
| Paper Chase | | |
| Playa Hatin' Hoes | | |
| Rich Kids 4 Life | | |
| Save Me | | |
| She Know | | |
| Shout It Or Be 'Bout It | | |
| Spread Your Love | | |
| Stand In My Way | | |
| Still Strugglin' | | |
| Streets Of L.A. (Make Me Wanna Cry) | | |
| Time After Time | | |
| Video Game Player | | |

Tooshort/catalog acquisition/too short schedule

## Dopefiend Music/Dopefiend Beats

| Title | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| When You See Me | | |
| Where You At? | | |
| Wreckognize | | |

Tooshort/catalog acquisition/too short schedule

## SCHEDULE II

Location of Chief Place of Business, Chief Executive Office and Books and
Records of Debtor:

> 1010 Forest Overlook Drive
> Atlanta, Georgia 30331

EXHIBIT A

Form of Copyright Security Agreement

## COPYRIGHT SECURITY AGREEMENT

This Copyright Security Agreement, dated as of May 30, 2001 (the "Copyright Security Agreement"), is made by and among Todd Shaw, Inc. (d/b/a "Too Short Records"), Todd A. Shaw (together with Todd Shaw, Inc., the "Grantors" and each a "Grantor") and Zomba Recording Corporation, a New York corporation ("Secured Party").

WHEREAS, Grantors own the copyrights in the Compositions (as defined below), including but not limited to those Compositions listed on the attached Schedule I, and any copyright registrations and copyright applications relating thereto;

WHEREAS, Todd Shaw, Inc. d/b/a "Too Short Records" is the Borrower under that certain Promissory Note dated May 30, 2001 (as the same may be amended from time to time, the "Promissory Note"), in favor of Secured Party; and

WHEREAS, pursuant to the terms of the Security Agreement, dated as of May 30, 2001 (as such Security Agreement may be amended from time to time, the "Security Agreement"), among Grantors and Secured Party (in such capacity, "Grantee"), the Grantors have granted to Grantee a security interest in all right, title and interest of such Grantor in, to and under all of the Works (as defined below) and to all rights relating to the Works throughout the universe, including but not limited to Copyrights (as defined below), to secure the payment of all amounts owing by the Grantors under the Promissory Note and the Security Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantors agrees as follows:

1.    Assignment and Grant of Security Interests.  To secure the complete and timely payment of all the Secured Obligations (as defined in the Security Agreement) of the Grantors, now or hereafter existing from time to time, each Grantor does hereby grant to Grantee, its successors and assigns, a continuing security interest in all right, title and interest throughout the universe of such Grantor in, to and under the following property, whether now owned or existing or hereafter acquired or arising and regardless of where located (all being collectively referred to as the "Collateral"):

(A)    All of such Grantor's right, title and interest in and to the musical compositions composed by Todd A. Shaw alone, or in collaboration with others, including without limitation the compositions listed on Schedule I hereto, all arrangements or portions thereof and all cues, titles, lyrics, libretti, music, musical scores, arrangements, adaptations, translations, annotations, and other versions thereof and all other works derived in whole or in part from the foregoing, whether claimed or registered as a musical composition or as part of a dramatico-musical work consisting of lyrics and/or music and all abridgements, condensations, revisions, interpolations, versions, collections,

compilations and adaptations thereof, whether registered or unregistered, published or unpublished, and all underlying materials and derivatives of all of the foregoing in any form, medium or embodiment (collectively, the "<u>Compositions</u>") that are subject to (i) that certain Co-Publishing Agreement dated as of February 2, 1988 by and among Zomba Enterprises, Inc. ("<u>ZEI</u>") and Willesden Music Inc. and Randy Austin and Todd Shaw d/b/a SRAND MUSIC (BMI), (ii) that certain Co-Publishing Agreement dated as of April 1, 1994 by and between ZEI and Dangerous Music, Inc. f/s/o Todd Shaw p/k/a "Todd Short", as amended from time to time and (iii) any other music publishing or other similar agreement covering the songwriting /publishing services of Todd Shaw or any entity pursuant to or through which Todd Shaw is now conducting or has previously conducted business (collectively, the "<u>Publishing Agreements</u>") (including, but not limited to the Copyrights in the Compositions listed on Schedule I hereto) now owned or hereafter created or acquired by such Grantor (the "<u>Works</u>");

(B)    All (a) copyrights, rights and interests in copyrights, works protectable by copyright, copyright registrations now owned or hereafter created or acquired by such Grantor (b) renewals and extensions of any of the foregoing; (c) income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing, including, without limitation, damages or payments for past or future infringements of any of the foregoing; (d) all rights to sue for past, present and future infringements of any of the foregoing; (e) all rights corresponding to any of the foregoing throughout the world; and (f) all goodwill associated with and symbolized by any of the foregoing (the "<u>Copyrights</u>") in, and all like rights relating to, the Works throughout the universe for the full term thereof (and any renewals extensions, restorations and/or continuations of the term or terms thereof, whether such rights are vested, contingent or reversionary under any copyright law now or hereafter in force or effect anywhere in the universe), including but not limited to all rights in the U.S. Copyright Office Registrations listed in Schedule II hereto, along with all of such Grantor's other rights in the Works of any nature, whether or not now known, and any legal, beneficial, or equitable right to the use or ownership of the Works in any and all fields of use now or hereafter existing throughout the universe, in any or all media, or by any means of technology, now known or hereafter developed, including but not limited to the rights to reproduce, adapt, transform, derive, distribute, perform, record, and to otherwise exploit the Works and create and exploit all derivative works based on the Works in any medium or by any manner now known or hereafter developed throughout the universe and to authorize others to do any or all of the foregoing;

(C)    Any and all agreements, assignments, licenses and other documents of whatsoever kind or nature, heretofore or hereafter made or executed, which relate to the Works, the Copyrights in and/or relating to the Works or any rights therein;

(D)     All causes of action in law or equity, including the right to sue for past, present and future infringement of the Copyrights, arising from the date of creation of each such Work, whether known or unknown to any Grantor or Grantee, and all the income, royalties, damages, payments, profits, receipts and proceeds from the foregoing, accrued and unpaid or hereafter accruing from the use of the Works, including, without limitation, damages or payments for past or future infringements of any of the Copyrights and also including, upon an event of default under the Promissory Note, the right to institute actions or proceedings in the Secured Party's own name; and

(E)     All proceeds of, and all other profits or receipts, in whatever form, arising from the sale, assignment licensing or other disposition of, or realization upon any Collateral, including, without limitation, all claims of such Grantor against third parties with respect to any Collateral, whether now existing or hereafter arising and any other value received as a consequence of the possession of any Collateral.

2.     No Modification of or Effect on the Security Agreement. Nothing herein shall be construed to modify or vitiate the terms and conditions of the Security Agreement, and all representations, warranties and covenants contained in the Security Agreement are incorporated by reference in this Copyright Security Agreement, and shall be given full force and effect as if fully set forth herein.

3.     Governing Law. This Copyright Security Agreement shall be governed, as applicable, by the laws of the United States and by the internal laws of the State of New York, irrespective of its choice of law provisions.

4.     Severability. If any part or provision of this Copyright Security Agreement is determined by a court of competent jurisdiction to be void, invalid or unenforceable, the remainder of this Copyright Security Agreement shall continue with full force and effect.

IN WITNESS WHEREOF, each Grantor has caused this Copyright Security Agreement to be duly executed as of the day first written above.

Acknowledged:

ZOMBA RECORDING CORPORATION

TODD SHAW, INC.,
d/b/a "Too Short Records"

By: _____

By: _____

Title: _____

Title: _____


_____
Todd A. Shaw
p/k/a "Too Short"

NY/336068.6

## ACKNOWLEDGMENT

STATE OF _____ )
                         ) ss.
COUNTY OF _____ )

On the ____ day of _____, ____ before me personally appeared _____, to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument as _____ of Zomba Recording Corporation who being by me duly sworn, did depose and say that he is _____ of Zomba Recording Corporation, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that the said instrument was signed and sealed on behalf of said corporation by order of its Board of Directors; that he signed his name thereto by like order; and that he acknowledged said instrument to be the free act and deed of said corporation.


                                    _____
                                          Notary Public

             {Seal}
My commission expires:_____

## ACKNOWLEDGMENT

STATE OF _____)
                  ) ss.
COUNTY OF _____)

          On the _____ day of _____, _____ before me personally appeared [          ], to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument as _____ of Todd Shaw, Inc., d/b/a "Too Short Records" who being by me duly sworn, did depose and say that he is _____ of Todd Shaw, Inc., d/b/a "Too Short Records", the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that the said instrument was signed and sealed on behalf of said corporation by order of its Board of Directors; that he signed his name thereto by like order; and that he acknowledged said instrument to be the free act and deed of said corporation.

                                  _____
                                    Notary Public

          {Seal}
My commission expires:_____

## ACKNOWLEDGMENT

STATE OF _____ )
                                        ) ss.
COUNTY OF _____ )

On the _____ day of _____, _____ before me personally appeared Todd A. Shaw, p/k/a Too Short, to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument, and who being by me duly sworn, did depose and say that he is the person who executed the foregoing instrument; and that he acknowledged said instrument to be his free act and deed.

_____
Notary Public

{Seal}
My commission expires:_____

## EXHIBIT B

Form of Trademark Security Agreement

**Execution Copy**

## TRADEMARK SECURITY AGREEMENT

This Trademark Security Agreement, dated as of May 30, 2001 (the "Trademark Security Agreement"), is made by and among Todd Shaw, Inc. (d/b/a "Too Short Records"), Todd A. Shaw (together with Todd Shaw, Inc., the "Grantors" and each a "Grantor") and Zomba Recording Corporation, a New York corporation ("Secured Party").

WHEREAS, Grantors own certain rights in the name "Too Short", including but not limited to trademark registrations and trademark applications relating thereto;

WHEREAS, Todd Shaw, Inc. is the Borrower under that certain Promissory Note dated May 30, 2001 (as the same may be amended from time to time, the "Promissory Note"), in favor of Secured Party;

WHEREAS, pursuant to the terms of the Security Agreement, dated as of May 30, 2001 (as such Security Agreement may be amended from time to time, the "Security Agreement"), among Grantors and Secured Party (in such capacity, "Grantee"), the Grantors have granted to Grantee a security interest in all right, title and interest of such Grantor in, to and under all of the Trademark Rights (as defined below) to secure the payment of all amounts owing by the Grantors under the Promissory Note and the Security Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantors agrees as follows:

1.     Assignment and Grant of Security Interests. To secure the complete and timely payment of all the Secured Obligations (as defined in the Security Agreement) of the Grantors, now or hereafter existing from time to time, each Grantor does hereby grant to Grantee, its successors and assigns, a continuing security interest in all right, title and interest throughout the universe of such Grantor in, to and under the following property, whether now owned or existing or hereafter acquired or arising and regardless of where located (all being collectively referred to as the "Collateral"):

(A)     (1) all rights, title and interest  in and to the name "Too Short" and  all trademarks, logos and goodwill associated therewith, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all applications in connection therewith, whether in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political

subdivision thereof,  (2) all renewals and extensions of any of the foregoing, (3) income, royalties, damages and payments now or hereafter due and/or payable under any of the foregoing, including, without limitation, damages or payments for past or future infringements of any of the foregoing, (4) all rights to sue for past, present and future infringements of any of the foregoing and (5) all rights corresponding to any of the foregoing throughout the world (collectively, the "Trademark Rights") ;

     (B)    Any and all agreements, assignments, licenses and other documents of whatsoever kind or nature, heretofore or hereafter made or executed, which relate to the Trademark Rights;

     (C)    All causes of action in law or equity, including, upon an event of default under the Promissory Note, the right to institute actions or proceedings in the Secured Party's own name; and

     (D)    All proceeds of, and all other profits or receipts, in whatever form, arising from the sale, assignment licensing or other disposition of, or realization upon any Collateral, including, without limitation, all claims of such Grantor against third parties with respect to any Collateral, whether now existing or hereafter arising and any other value received as a consequence of the possession of any Collateral.

     2.    No Modification of or Effect on the Security Agreement. Nothing herein shall be construed to modify or vitiate the terms and conditions of the Security Agreement, and all representations, warranties and covenants contained in the Security Agreement are incorporated by reference in this Trademark Security Agreement, and shall be given full force and effect as if fully set forth herein.

     3.    Governing Law. This Trademark Security Agreement shall be governed, as applicable, by the laws of the United States and by the internal laws of the State of New York, irrespective of its choice of law provisions.

Severability. If any part or provision of this Trademark Security Agreement is determined by a court of competent jurisdiction to be void, invalid or unenforceable, the remainder of this Trademark Security Agreement shall continue with full force and effect.

IN WITNESS WHEREOF, each Grantor has caused this Trademark Security Agreement, to be duly executed as of the day first written above.

Acknowledged:

ZOMBA RECORDING CORPORATION

By: _____
Title: _____

TODD SHAW, INC.,
d/b/a "Too Short Records"

By: _____
Title: _____

_____
Todd A. Shaw
p/k/a "Too Short"

NY/339368.2

## ACKNOWLEDGMENT

STATE OF _____ )
                                    ) ss.
COUNTY OF _____ )

       On the _____ day of _____, _____ before me personally appeared _____, to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument as _____ of Zomba Recording Corporation who being by me duly sworn, did depose and say that he is _____ of Zomba Recording Corporation, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that the said instrument was signed and sealed on behalf of said corporation by order of its Board of Directors; that he signed his name thereto by like order; and that he acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public

      {Seal}
My commission expires:_____

NY/339368.2

## ACKNOWLEDGMENT

STATE OF _____)
                 ) ss.
COUNTY OF _____)

        On the _____ day of _____, _____ before me personally appeared [ ], to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument as _____ of Todd Shaw, Inc., d/b/a "Too Short Records" who being by me duly sworn, did depose and say that he is _____ of Todd Shaw, Inc., d/b/a "Too Short Records", the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that the said instrument was signed and sealed on behalf of said corporation by order of its Board of Directors; that he signed his name thereto by like order; and that he acknowledged said instrument to be the free act and deed of said corporation.

 

                                                _____
                                                  Notary Public

        {Seal}
My commission expires:_____

## ACKNOWLEDGMENT

STATE OF _____)
                                        ) ss.
COUNTY OF _____)

On the _____ day of _____, _____ before me personally appeared Todd A. Shaw, p/k/a Too Short, to me personally known or proved to me on the basis of satisfactory evidence to be the person described in and who executed the foregoing instrument, and who being by me duly sworn, did depose and say that he is the person who executed the foregoing instrument; and that he acknowledged said instrument to be his free act and deed.

_____
Notary Public

{Seal}
My commission expires:_____

NY/339368.2