UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
|  | ) | CASE NO. 09-61855-BEM |
| TODD ANTHONY SHAW, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| S. GREGORY HAYS, as Chapter 7 trustee, | ) |  |
|  | ) |  |
| Movant, | ) |  |
|  | ) |  |
| v. | ) | CONTESTED MATTER |
|  | ) |  |
| THE INTERNAL REVENUE SERVICE, SOUND EXCHANGE, INC., BROADCAST MUSIC, INC., SONY MUSIC ENTERTAINMENT, BOBBY FRANK ELLERBEE, as Administer of ESTATE OF JAMES F. ELLERBEE, BOBBY FRANK ELLERBEE, THE GEORGIA DEPARTMENT OF REVENUE, GUILFORD FOREST HOMEOWNERS ASSOCIATION, INC., COLLECTIONS INC. OF SAN FRANCISCO A CALIFORNIA CORPORATION, RONNIE JACKSON, JR., and TODD ANTHONY SHAW, | ) | |
|  | ) |  |
| Respondents. | ) |  |

**TRUSTEE'S REPLY TO DEBTOR'S OBJECTION TO SALE MOTION**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Todd Anthony Shaw ("**Debtor**"), through undersigned counsel, and files *Trustee's Reply to Debtor's Objection to Sale Motion* (the "**Reply**"), respectfully showing:

**Introduction**

When Debtor filed this case in 2009, there was no reasonable prospect of a trustee making a distribution, let alone a meaningful distribution, to unsecured creditors. Indeed, on his bankruptcy disclosure forms, Debtor swore under penalty of perjury that: (a) he had no meaningful unencumbered assets (notably, he did not schedule the royalty streams at issue in this matter), (b) he had total debts of about $1,880,000.00, and (c) his monthly net income was *negative* $2,727.00. Despite this less than optimistic initial outlook, Trustee and his professionals have turned this Bankruptcy Estate into one through which Trustee is likely to pay all holders of general unsecured claims (timely and untimely) 100% of their claims and to make a large surplus distribution to Debtor.

Apparently hoping to reap the rewards of Trustee's efforts over the previous 14 years in salvaging this case, Debtor has now appeared at the last minute seeking to insert his business judgment for that of Trustee, arguing, among other things,[1] that the Court should deny the Sale Motion[2] because Trustee is allegedly attempting to sell the Bankruptcy Estate's interest in the Transferred Assets for cents on the dollar. Debtor is wrong. The proposed sale price is a fair and reasonable price for the subject assets. Debtor's contrary arguments ignore basic principles of finance and the time value of money along with the fact that Trustee has been marketing the assets since March of 2021. In other words, after more than two years of marketing the assets, the market

---

[1]   Trustee will address each of the arguments set out in Debtor's objection [Doc. No. 293] at the hearing on Trustee's Sale Motion [Doc. No. 280]. In this Reply, Trustee intends to focus solely on the issue of whether the proposed sale price is reasonable. Trustee reserves all rights in this regard and a valid exercise of his business judgment.

[2]   Capitalized terms not defined in this Reply shall have the meanings ascribed to them in Trustee's Sale Motion [Doc. No. 280].

2

has spoken. In sum, Trustee has sound business reasons for moving forward with the proposed sale, and, as a result, he has met his burden under Section 363 of the Bankruptcy Code.

As stated in the original Sale Motion and as supplemented below, the Court should grant the Sale Motion and authorize Trustee to sell the Bankruptcy Estate's interest in the Transferred Assets to Reservoir Media Management, Inc. for a sale price of $7,550,000.00

## Background and Supplemental Facts

1. On January 26, 2009 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, starting Case No. 09-61855-BEM (the "**Bankruptcy Case**" or "**Case**").

2. After filing the Case and appearing at his Section 341 meeting, Debtor effectively disappeared for 11 years (Debtor's bankruptcy counsel withdrew at the outset of the Case), but for two telephone calls in 2020 to Trustee's counsel regarding the status of the Case.[3]

3. Trustee is the sole representative of the Bankruptcy Estate. 11 U.S.C. § 323(a).

4. The duties of Trustee include a duty to "collect and reduce to money the property of the estate . . . ." 11 U.S.C. § 704.

5. When Debtor filed this Case, he disclosed no interests in intellectual property, including copyrights or royalty payments, and he scheduled no interests in accounts receivable or other payment streams he was entitled to receive. *See* [Doc. No. 11 at page 12 of 31].

6. In addition, he indicated on his *Schedule E – Creditors Holding Unsecured Priority Claims* he did not file tax returns in the nine years that preceded his bankruptcy filing, stating that

---

[3] During these calls, Trustee's counsel provided an update on the status of the Case and informed Debtor's attorneys (who never made appearances in the Case) that Trustee intended to sell the subject royalty streams.

3

he had unfiled tax returns from 1999 through 2008 owed to the Internal Revenue Service and the Georgia Department of Revenue.  [Doc. No. 11 at page 18 of 31].

7. And, as mentioned in the Sale Motion, Trustee learned through a stay relief motion of Zomba Recording LLC ("**Zomba**")[4] (and later Sony Music Entertainment ("**Sony**"), as successor) that it held a security interest in certain of the unscheduled music royalties that are the subject of the Sale Motion.  This security interest secured a loan by Zomba to Debtor for $750,000.00.  Following a stipulation between Trustee and Zomba, the Bankruptcy Estate began to receive 20% of payments owed to it by Zomba Enterprises, Inc.[5] (and later Universal Music Publishing Group, Inc. ("**Universal**"), as successor).

8. After Sony's security interest was close to being paid in full, in 2018, Trustee and his professionals began preparing the assets of the Bankruptcy Estate for a sale, by seeking documents and information from Sony and Universal regarding the status of payments owed to the Bankruptcy Estate and any security interests in the same.

9. In fact, in every trustee interim report that Trustee has filed in this Case since 2010 and in almost every document that Trustee filed after August 18, 2018, Trustee stated that he was preparing to sell the royalty streams.  *See, e.g.,* [Doc. No. 94].

10. In March of 2021, Trustee filed an application to employ MCE Management LLC ("**MCE**") as his brokers to market and sell the royalty streams, and the Court entered an order approving this employment.  *See* [Doc. Nos. 209-210].

---

[4] In addition to not scheduling the royalty streams that have resulted in the recoveries in this Case, Debtor also did not schedule the claims of Zomba, whether as secured or unsecured.

[5] There is also no mention in Debtor's schedules about Zomba Enterprises, Inc. or its relationship with the Debtor.

4

11. After being employed, MCE determined that, in addition to payments from Universal and Sony, the Bankruptcy Estate was also likely entitled to payments from Broadcast Music, Inc. ("**BMI**") and SoundExchange, Inc. ("**SoundExchange**").

12. Like the payments from Universal and Sony (or, their predecessors), Debtor also did not schedule these payments. Instead, upon information and belief, Debtor (or other entities at Debtor's instruction) stole what Trustee estimates could be more than $500,000.00 of Bankruptcy Estate funds after the Petition Date from SoundExchange and BMI that should have been paid to Trustee.[6]

13. Shortly after discovering that the Bankruptcy Estate was owed money by BMI and SoundExchange, Trustee made demand on them to turn over all payments owed to the Bankruptcy Estate. Since then, they have been making all required payments to Trustee.

14. After years of work by Trustee and his professionals to gather information to market these assets, marketing them, and then negotiating a sale agreement, Trustee filed his Sale Motion on May 1, 2023. [Doc. No. 280].

15. Trustee set the matter for hearing on July 11, 2023, or 71 days after filing the Sale Motion. This is three times more than the 21-days' notice required by Rule 2002 of the Federal Rules of Bankruptcy Procedure, but Trustee intentionally did so because Universal held a right of first refusal that would have let it match the pending sale price within 60 days of receiving notice

---

[6] Trustee will be filing an adversary proceeding against Debtor and any other entity that stole funds from the Bankruptcy Estate. Trustee is gathering information regarding the taking of these funds. Trustee reserves all rights in this regard.

5

of the proposed sale. Universal has investigated the assets and informed Trustee it does not intend to exercise this right.[7]

16. Despite the fact that Debtor had effectively disappeared from the Case (and was without counsel), on July 7, 2023, the last day to file written objections and *67 days* after Trustee filed and served his Sale Motion, Debtor filed his *Objection to Sale Motion* [Doc. No. 293] (the "**Objection**"), arguing that the Court should deny the Sale Motion because (a) Debtor has asked to convert the Case to Chapter 11[8]; and (b) Trustee is trying to sell the Transferred Assets at a steep discount and thus harming Debtor and breaching his fiduciary duties to Debtor.[9] [Objection]. Debtor also argues that it is unclear why at this stage of the Case Trustee is trying to sell the Transferred Assets when Trustee has never indicated an intent to do anything other than collect the royalty streams over time. *Id.* at page 2 (stating "Trustee seeks to suddenly change course.").

17. As to valuation, Debtor more particularly argues:

> even conservatively estimating that only $450,000-$500,000 will continue to be available annually (that amount is likely to be higher) and even assuming such amounts are only available for the next couple of decades (that period is likely to be longer), the Shaw Music Catalogue is worth significantly more than the Trustee is proposing to sell it for. To accept a mere $7.55 million for what is literally a cash payment stream totaling many times that "shocks the conscience" and must be denied.

*Id.* at page 10 of 12 (citing *Matter of Cossett*, 51 B.R. 166, 168 (Bankr. S.D. Ohio 1985)).

---

[7] This is additional evidence that the proposed sale price is an appropriate exercise of Trustee's business judgment.

[8] In a later response, Trustee will explain why Debtor is not entitled to convert the Case, including, without limitation, the fact that he and his representatives have stolen hundreds of thousands of dollars that belong to the Bankruptcy Estate. Trustee reserves all rights in this regard.

[9] Debtor also asked to continue the hearing on the Sale Motion because he needs time to conduct discovery. Trustee objects to this belated attempt because Debtor has had 71 days to do so and his failure to act timely has resulted in a waiver of any such request. Trustee will be prepared to argue this issue more thoroughly at the hearing on the Sale Motion.

***Argument in Support of Granting the Sale Motion***

18. The Court should overrule the Objection and grant the Sale Motion. The standard to grant a sale of property outside of the ordinary course of business is the sound business judgment of the trustee. *In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). In this regard, a trustee's showing need not be exhaustive; rather, a trustee is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Put another way, "[t]he Trustee is responsible for the administration of the estate and his judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met." *In re Diplomat Constr., Inc.*, 481 B.R. 215, 219 (Bankr. N.D. Ga. 2012) (Diehl, J.) (citing *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998)).

19. Here, and as originally set out in the Sale Motion, Trustee can satisfy this burden because the proposed sale is for a Purchase Price of $7,550,000.00, which is the highest and best offer that Trustee has received in the more than two years he has been marketing the Transferred Assets for sale, and it will allow Trustee to pay all unpaid timely and tardy claims, all outstanding administrative expenses (including the taxes that will arise because of the proposed sale), and then a surplus distribution to Debtor over seven figures.

20. Debtor's primary issue with the proposed sale is an incorrect argument that Trustee is trying to sell the Transferred Assets for a fraction of their true value. However, this argument is overcome by math. For example, assuming that Debtor's assertions are correct (that the Transferred Assets will likely generate $500,000.00 a year for "the next couple of decades"),

7

discounting that cash flow back to present value shows that the proposed purchase price of $7,550,000.00 is a good result for the Bankruptcy Estate. For example, $500,000.00 a year for 20 years at a 10% discount rate results in a present value of $4,256,781.86, and using that same discount rate for $500,000.00 a year for 70 years (in his Objection, Debtor asserts that the royalty streams will last for 70 years after his death under 17 U.S.C.A. § 30(a)) results in a present value of $4,993,668.86. Nothing about these present value calculations juxtaposed to the proposed sale price of $7,550,000.00 "shocks the conscience." Instead, the proposed purchase price is a good result for the Bankruptcy Estate, and Trustee has a sound business reason to sell the Transferred Assets for $7,550,000.00. Doing so is not only in the best interests of the holders of timely and tardily filed claims but also is in the best interests of Debtor.

21. In addition, and irrespective of arguments related to valuation through present value calculations, Trustee has had these assets marketed for sale since 2021. The proposed sale price of $7,550,000.00 is the highest and best offer that Trustee has received during that time. In other words, the market has determined the value of the Transferred Assets, and, yet again, Trustee has a sound business reason to sell the Transferred Assets for that amount.

22. Moreover, Debtor's argument that Trustee has done a complete about face in seeking approval of the proposed sale is also wrong and effectively ignores almost everything that has happened in this Case. Indeed, in every interim report that Trustee has filed in this Case he has stated that he intends to sell the royalty streams. And, for almost 5 years, Trustee has been gathering information and preparing to sell the subject property interests, and almost every document that he has filed in the Case during that period indicates as much. In addition, he employed a broker (by filing an application on the docket in the Bankruptcy Case) and has been marketing the assets for sale for over two years. Moreover, in 2020, Trustee's counsel spoke with

8

Debtor's entertainment lawyer and a separate bankruptcy lawyer, Josh Binder and Na'il Benjamin, and he explained that Trustee intended to sell the subject assets. Debtor may have had his head in the sand and ignored the filings in his Case along with the information provided to his counsel, but his accusations are wrong. Trustee is doing what the Bankruptcy Code charges him to do: liquidate assets to benefit the Bankruptcy Estate.

23. Finally, Debtor's argument that Trustee should simply hold on to the assets and collect the royalty streams to pay creditors in full does nothing more than pass the risk of recovery on to creditors who have not been paid in full for *14 years*. Enough time has passed. Debtor's pre-petition creditors have suffered long enough and deserve to finally be paid. Trustee has put this Bankruptcy Estate into a posture to pay all creditors and administrative expense claimants in full and to make a large surplus distribution to Debtor. If Debtor did not steal what Trustee estimates could be more than $500,000.00 from SoundExchange and BMI that should have been delivered to Trustee, there may not have been a need for a sale, and this Case might have already closed. But, he did.

24. In summary, given the current posture of the Case, it is Trustee's business judgment to move forward with the proposed sale, and Trustee respectfully requests that the Court grant his Sale Motion.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a) Granting the Sale Motion;

(b) Overruling the Objection; and

(c) Granting such other and further relief as the Court considers just or appropriate.

Respectfully submitted this 10th day of July, 2023.

>ROUNTREE LEITMAN KLEIN & GEER LLC
>*Attorneys for Trustee*
>
>By:*/s/ Michael J. Bargar*
>Michael J. Bargar
>Georgia Bar No. 645709
>mbargar@rlkglaw.com

Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329
404-410-1220

## CERTIFICATE SERVICE

This is to certify that I have this day caused to be served a copy of the foregoing *Trustee's Reply to Debtor's Objection to Sale Motion* by filing same with the Court using the CM/ECF system, which will send an electronic mail notification to the parties as indicated below:

Christina M Baugh
christina.baugh@btlaw.com
lisa.mitchum@btlaw.com

Frank W. DeBorde
fwd@mmmlaw.com
lwolgast@mmmlaw.com
twagner@mmmlaw.com

S. Gregory Hays
ghays@haysconsulting.net
saskue@haysconsulting.net
GA32@ecfcbis.com

Martin P. Ochs
martin.p.ochs@usdoj.gov

Office of the United States Trustee
ustpregion21.at.ecf@usdoj.gov

This is to further certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Reply to Debtor's Objection to Sale Motion* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail, to the following persons at the addresses stated:

Christina M Baugh
Barnes & Thornburg LLP
Suite 2900
3340 Peachtree Road NE
Atlanta, GA 30326

Todd Anthony Shaw
151 Oak Street
Hahnville, LA 70057

Todd Shaw
6130 Eisner Drive
Las Vegas, NV 89131

Todd Shaw
11271 Ventura Blvd #229
Studio City, CA 91604

Todd Anthony Shaw
1010 Forest Overlook Drive
Atlanta, GA 30331

This 10th day of July, 2023.

/s/ *Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709