**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| TODD ANTHONY SHAW, | ) Case No. 09-61855 (BEM) |
| Debtor | ) Related Docket No. 280 |

**LIMITED OBJECTION OF SOUNDEXCHANGE, INC. TO TRUSTEE'S MOTION FOR AUTHORITY TO SELL PROPERTY OF THE BANKRUPTCY ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

SoundExchange, Inc. ("SoundExchange"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the *Trustee's Motion for Authority to Sell Property of the Bankruptcy Estate Free and Clear of Liens, Claims, Interests, and Encumbrances* (the "Motion")[1] (Docket No. 280). In support of its Objection, SoundExchange states as follows:

**RELEVANT BACKGROUND**

1. SoundExchange, a non-profit Delaware corporation, is the sole "Collective Agent" authorized by the United States Copyright Royalty Judges to (i) receive Statements of Account, royalty payments and Reports of Use from entities that make ephemeral reproductions and public performances sound recordings eligible for the statutory licenses set forth in sections 112 and 114 of the Copyright Act, 17 U.S.C. §§ 112(e) and 114 (d)(2) (the "Statutory Licenses"), *see* 37 C.F.R. § 380.4(d), and (ii) to distribute digital performance royalties to featured and non-featured artists and copyright owners for the non-interactive use of sound recordings pursuant to the Statutory Licenses.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

159604067v2

2. Pursuant to applicable law, forty-five percent (45%) of performance royalties are paid directly to the featured artist on a recording, five percent (5%) are paid to a fund for non-featured artists, and the other fifty percent (50%) of performance royalties are paid to the rights owner of the sound recording. *See* 17 U.S.C. § 114(g)(2).

3. In furtherance of the Statutory Licenses, SoundExchange has strict rules regarding, *inter alia*, (i) payments to third parties (anyone that is not the featured artist or the owner of the sound recording copyright), which payments are only permitted in very limited circumstances; (ii) changes to letter of directions, whereby a featured artist directs SoundExchange to pay a portion of the featured artist's sound recording performance royalties to a participant involved in the creative process – producers, engineers, mixers, re-mixers, etc. and (iii) the allocation of royalties between multiple featured artists.

4. Prior to the Petition Date, Todd Anthony Shaw (the "Debtor") registered with SoundExchange to receive and was paid certain performance royalties. Gregory Hays, as the chapter 7 trustee for the Debtor's estate (the "Trustee"), has been collecting the performance royalties since the Petition Date for the benefit of the Debtor's creditors.

5. Prior to the Petition Date, Reservoir Media Management, Inc. (the "Purchaser") registered with SoundExchange.

6. SoundExchange has provided the Trustee and the Purchaser a list of sound recordings (the "SE Catalog") currently understood by SoundExchange as those for which the Debtor (and the Trustee who now stands in the shoes of the Debtor as a result of the chapter 7 filing) would be entitled to some or all of the royalties payable to featured artists or copyright owners under the Statutory Licenses (such royalty entitlement, the "Debtor Share").

**LIMITED OBJECTION**

7.      SoundExchange does not, in general, object to the sale of the Transferred Assets to the Purchaser.  Rather, SoundExchange simply seeks language to be added to any order approving the sale (the "Sale Order") to address its concerns as follows:

8.      First, the Sale Order must make it clear that as to SoundExchange the Purchaser stands in the shoes of the Debtor and shall have no greater or lesser rights than the Debtor had with respect to the Transferred Assets.  In furtherance of this, Exhibit 4 to the APA (Notice of Assignment / General Letter of Direction), which is to be provided to SoundExchange, should incorporate this concept.

9.      The Purchaser has taken the position that SoundExchange should not be concerned about the sale and that the sale of the Transferred Assets is nothing more than implementing a change in the payment of royalties between the Trustee and the Purchaser.  SoundExchange does not agree.  This is not a private sale between two parties, but rather a sale governed by section 363 of the Bankruptcy Court wherein SoundExchange has been noticed as an interested party and wherein the purchaser will receive an order from this Court that may affect SoundExchange.

10.     Paragraph 30 of the Motion states that the Trustee is requesting an order from the Court **ordering and directing** the Payors, which includes SoundExchange, to account and pay the applicable royalty payments and income to Purchaser following the Closing Date.  Schedule A to the APA is a list of the Subject Recording Royalties and specifically includes all royalties and amounts credited to the SoundExchange accounts.  However, as reflected in footnote 3 of the Motion, Schedule A to the APA has not been filed so SoundExchange cannot compare what is listed on Schedule A to the SE Catalog SoundExchange provided the Trustee and Purchaser. As

3

159604067v2

this is an "as is/where is" sale, the Purchaser accepts this risk. However, the Sale Order should not require SoundExchange to pay royalties that might not otherwise be payable to the Purchaser.

11. Similarly, the APA provides that the Transferred Assets include "the sole and exclusive right to collect an undivided one hundred percent (100%) of any and all Subject Recording Royalties payable from and after the Cash Date". The SE Catalog includes works where the Debtor was a collaborator or included multiple artists featured on the recording, in which case SoundExchange is only paying the Debtor's share of the artist royalties to the Trustee. SoundExchange takes no issue with paying the Debtor's share of the artist royalties to the Purchaser upon the closing of the sale. However, sometimes disputes arise over collaborations, featured artist credits and other entitlements to royalties for a sound recording, resulting in changes to who is getting paid and/or the amount being paid. By ensuring that the Purchaser stands in the shoes of the Debtors, SoundExchange can avoid a situation where the APA or sale order conflict with how SoundExchange addresses these matters.

12. Second, in order to maintain the integrity and security of separate accounts, the Sale Order should provide that the Seller shall not transfer to the Purchaser any of the Debtor's usernames, passwords, and other logins related to SoundExchange (the "Debtor's Logins"). Transferring the Debtor's Logins to the Purchaser is especially troubling because the Debtor has sound recordings which were made after the chapter 7 case was filed and for which he receives royalties that are not a part of this bankruptcy estate.

13. There will no prejudice to the Purchaser as a result of not transferring the Debtor's Loggins to the Purchaser since the Purchaser is already registered with SoundExchange. Upon written notice to SoundExchange that the sale has closed, SoundExchange will transfer the recordings at issue to the Purchaser's account, thereby providing the Purchaser will full and

159604067v2

complete access to the SE Catalog. Furthermore, the Debtor can decide to provide "guest authorization" to the Purchaser, which provides an audit trail and reduces uncertainty as to who is accessing, and potentially making changes, to the account.

14. Third, the Sale Order should provide that Exhibit 8 (Certification of Assignment of SoundExchange Featured Artist Royalties) and Exhibit 9 (SoundExchange Account Authorization Form) (collectively, the "SE Documents") to the APA are deemed void and of no effect. Because there will be a Sale Order approving the sale of the Transferred Assets to the Purchaser, SoundExchange does not need the SE Documents to be executed by the Purchaser and the Trustee. Moreover, even if SoundExchange required the SE Documents in connection with the proposed transaction, the SE Documents would need to be executed without modification. Here, the Trustee and Purchaser have made modifications to the SE Documents.

15. Finally, the Sale Order should be clear that this Court retains jurisdiction, but not "exclusive" jurisdiction, with respect to any dispute regarding SoundExchange and the Transferred Assets. It is unlikely that this Court would have subject matter jurisdiction in the event of a dispute between SoundExchange and Purchaser and this Court should not limit or predetermine the proper jurisdiction for such disputes.

## PROPOSED LANGUAGE

16. To address its concerns and otherwise resolve the instant Objection, SoundExchange proposes that the following language be included in the Sale Order (the "SoundExchange Proposed Language"):

> Notwithstanding anything in the Asset Purchase Agreement, including any exhibits thereto, (collectively the "APA") or this Order, (i) with respect to SoundExchange, the Purchaser stands in the shoes of the Debtor and shall have no greater or lesser rights than the Debtor had with respect to the Transferred Assets including, but not limited to, the Subject Recordings Royalties; (ii) the Seller shall

5

not transfer to the Purchaser any usernames, passwords, and other logins related to SoundExchange; (iii) Exhibit 8 and Exhibit 9 to the APA are deemed void and of no effect and (iv) the Notice of Assignment and General Letter of Direction (the "Notice"), attached to the APA as Exhibit 4, to be sent to SoundExchange shall specifically reference this paragraph of the Order and this paragraph of the Order shall be deemed to be fully incorporated into such Notice.

Additionally, notwithstanding anything contained in the APA, the Bankruptcy Court shall only have exclusive jurisdiction over the Seller and Purchaser for enforcement of the APA and any dispute between the Seller and Purchaser concerning any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning the APA.

## RESERVATION OF RIGHTS

17.     SoundExchange reserves the right to amend or supplement its Objection and to present argument at the hearing in connection with the same.

## CONCLUSION

WHEREFORE, SoundExchange respectfully requests that the Court (i) include the SoundExchange Proposed Language in the Sale order and (ii) grant such other and further relief as the Court deems just and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

159604067v2

| | |
|---|---|
| Dated: July 10, 2023<br>Wilmington, Delaware | **TROUTMAN PEPPER HAMILTON SANDERS LLP**<br><br>By: */s/Gary W. Marsh*<br>Gary W. Marsh (Georgia State Bar No. 471290)<br>600 Peachtree Street, NE, Suite 3000<br>Atlanta, GA 30308<br>Tel: (404) 885-2752<br>Email: gary.marsh@troutman.com<br><br>-and-<br><br>Evelyn J. Meltzer *(pro hac vice pending)*<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>Wilmington, Delaware 19801<br>Tel: (302) 777-6500<br>Email: evelyn.meltzer@troutman.com<br><br>*Attorneys for SoundExchange, Inc.* |