UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>Todd Anthony Shaw,<br><br>Debtor. | CHAPTER 7<br><br>Case No. 09-61855<br><br>Honorable Barbara Ellis-Monro |

### DECLARATION OF AARON GAVANT

I, Aaron Gavant, hereby declare and state as follows:

1. I am a partner in the law firm of Barnes & Thornburg LLP ("Barnes & Thornburg") with an office at One North Wacker Drive, Suite 4400, Chicago, IL 60606.

2. Barnes & Thornburg represents Todd Anthony Shaw (the "Debtor"), the Debtor in the above-captioned matter (the "Bankruptcy Case").

3. On July 11, 2023, I filed my application to be admitted *pro hac vice* in the Bankruptcy Case [Docket No. 301], which the Court granted on July 14, 2023 [Docket No. 305.].

4. On June 30, 2023, Barnes & Thornburg, on behalf of the Debtor, reached out to counsel for Gregory S. Hays, the chapter 7 trustee appointed in the above-captioned matter (such counsel and the chapter 7 trustee, collectively, the "Trustee"), to propose alternative financing from that proposed in the Sale Motion [Docket No. 280]. That proposed alternative financing would fully satisfy all claims in the Bankruptcy Case.

1

5.  Barnes & Thornburg continued to discuss the Debtor's proposal with the Trustee throughout the month of July, and reiterated its offer regarding obtaining alternative financing via email on July 6, 2023, July 12, 2023, and July 13, 2023.  Trustee and I also discussed obtaining alternative financing in person during breaks in the July 11, 2023 hearing.

6.  On July 20, 2023, I provided the Trustee with a letter memorializing the total amount that the Trustee had indicated would fully satisfy all claims in the Bankruptcy Case and again confirmed that the Debtor would provide the funding required to satisfy those amounts.

7.  On July 25, 2023, I confirmed to the Trustee that Sound Royalties would be the entity providing the funding in question directly to the Trustee, to fully satisfy all claims in the Bankruptcy Case, through a tripartite agreement between Sound Royalties, the Debtor and the Trustee.  I further offered to connect the Trustee with Sound Royalties. That same day, the Trustee confirmed he was not willing to consider alternative financing from the Sale Motion and would be moving forward with the Sale Motion.

8.  On July 26, 2023, on behalf of the Debtor, I requested the Trustee reconsider its position. The Trustee again refused.

9.  On July 27, 2023, I again informed the Trustee, through email, that the Debtor had finalized an agreement with Sound Royalties (i) to fund all remaining amounts owed in the Bankruptcy Case (including an increase to the amounts necessary to be paid, as communicated to me by the Trustee after the initial transmittal of the letter of commitment) and (ii) to be secured by an assignment of certain of the royalty interests in the music catalogue at issue in the Sale Motion (the "<u>Royalty Assignment Agreement</u>"). I again offered to connect the Trustee with Sound Royalties' CEO and General Counsel.

2

10. I further attached to the June 27, 2023 email a copy of the Royalty Assignment Agreement for the Trustee's review. A true and correct copy of the proposed Royalty Assignment Agreement, which like other similar financing agreements for entities like the Debtor whom I represent was maintained in my files, is attached hereto as **Exhibit A**.

11. On July 27, 2023 and July 28, 2023, the Trustee again confirmed via email that he would not negotiate the Royalty Assignment Agreement and was not willing to consider an alternative financing proposal at that time.

Pursuant to 23 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th of July, 2023

By: */s/ Aaron Gavant*
Aaron Gavant
Barnes & Thornburg, LLP

# Exhibit A

**Proposed Royalty Assignment Agreement**



# ROYALTY ASSIGNMENT AGREEMENT

THIS ROYALTY ASSIGNMENT AGREEMENT ("Agreement") is entered into as of July___, 2023 (hereafter the "Effective Date"), by Sound Royalties, LLC, having a principal place of business at 1641 Worthington Road, Suite 410 West Palm Beach, FL 33409 ("Assignee"), and S. Gregory Hays, Chapter 7 Trustee for the bankruptcy estate of Todd Anthony Shaw ("Assignor") and is accepted and agreed to by Todd Anthony Shaw ("Shaw").

## Recitals

WHEREAS, Shaw filed a Chapter 7 Bankruptcy Petition on January 26, 2009 in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), Case No. 09-61855-BEM (the "Bankruptcy Case"), and Assignor was duly appointed as the Chapter 7 Trustee of the Bankruptcy Estate (the "Bankruptcy Estate");

WHEREAS, the musical royalties payable to Shaw by various royalty payors, including Empire Distribution, Sony Music Entertainment and Universal Music Publishing Group are assets of the Bankruptcy Estate, and Assignor has been collecting such royalties and remitting payment to the creditors of the Bankruptcy Estate;

WHEREAS, to allow Assignor to fully resolve the Bankruptcy Case, including by paying all remaining creditors in full, and close the Bankruptcy Estate and, Assignee has agreed to purchase the rights to receive certain musical royalties from Assignor as set forth herein;

NOW, THEREFORE, for valuable consideration, the parties hereto agree as follows:

1. **Assignment**.

    a.  In consideration of the sum of $1,500,000.00 ("Assignment Price"), to be paid by Assignee to Assignor, Assignor hereby sells, transfers, absolutely assigns, and conveys to Assignee all of Assignor's right to receive all payments, including any advances or loans, derived from publishing and the master recording royalties paid by Empire Distribution ("Empire"), Universal Music Publishing Group ("Universal") and Sony Music Entertainment, Inc. ("Sony"), respectively, up to the Assigned Royalties set forth on Exhibit 1 (collectively, the "Assigned Royalties") related to all musical works of Todd Anthony Shaw. **Nothing in this Agreement shall be deemed to be a sale of Shaw's catalog of Compositions or grant Assignee any rights in any copyright owned by Shaw**.

    b.  (i)  As of the Effective Date and subject to the terms of this Agreement, Assignee shall be entitled to receive all Assigned Royalties directly from Empire, Sony and Universal Accordingly, Assignor shall direct, and take all actions necessary and/or required to

Page 1

cause, Sony and Universal to pay the Assigned Royalties, regardless of when earned, directly to Assignee, including executing required letters of direction.

(ii) The Assigned Royalties are from Empire, Universal Music Publishing Group publisher account number VDH6, and Sony Music Entertainment Label account number Z0089 ("Publisher and Label Accounts").

c. Assignee shall deposit the Assignment Price into an escrow account acceptable to the Assignor promptly following the later of: (i) verification of on-line portal login credentials for the Publisher and Label Accounts, if any; (ii) the mutual execution and delivery of this Agreement. Pursuant to the terms of the agreement governing such escrow account, the Assignment Price shall be released from escrow: (1) to the Assignor upon approval of the transaction contemplated hereby by the Bankruptcy Court; or (2) to the Assignee to the extent the Bankruptcy Court does not provide such approval within 60 days of the Effective Date. Assignor and Assignee explicitly recognize and agree that legal title to, and possession of, the Assigned Royalties shall pass to Assignee to the extent, and as of the date, of release of the Assignment Price from escrow to the Assignor and shall not revert except as set forth herein. In the event that the transaction contemplated by this Agreement is not approved by the United States Bankruptcy Court within 60 days of the Effective Date, Assignee shall have the option to terminate this Agreement with no further obligation to Assignor.

d. **This transaction is an assignment of all or a portion of the Assigned Royalties, not a loan**. Assignee shall be responsible for the income taxes attributable to the Assigned Royalties assigned by this Agreement and shall report such payments as income. Assignee shall issue a 1099 (or 1042 if applicable) to Assignor for the Assignment Price.

e. Upon the resolution of the Bankuptcy Case and closing of the Bankruptcy Estate, all rights in and to the copyrights giving rise to the Assigned Royalties shall vest in Shaw. To the extent that these rights are affected by this Agreement, Shaw hereby agrees to its terms.

2. **Assignor Protections.** Assignee has estimated the amount of royalties that the Assigned Royalties will produce during the first 48 months after the Effective Date, and this estimated income is itemized on Exhibit 1 to the Agreement and such payments are hereby assigned to Assignee. In order to mitigate the risk of unexpected increases in the amount of the payments from the Assigned Royalties, Assignee and Assignor agree to the following provisions:

a. *Increases in Annual Income Generated by Assigned Royalties*: If the cumulative Assigned Royalties received by Assignee exceed the annual Assigned Royalties stated on Exhibit 1 in any year, Assignee agrees to pay to Shaw any such overage within 15 days of receipt (provided the overage is at least $50.00) (the "Excess Funds"). Assignee's obligation to make this payment shall be expressly contingent on Assignor's full compliance with the Agreement in all respects, including Assignee's receipt of the Assigned Royalties for all prior years and that no unpaid costs, expenses, or any other amounts are due from Assignor to Assignee under this Agreement. In determining Assignee's obligations under this paragraph, the parties agree that the time periods set in this provision shall commence upon the Effective Date.

b. *Early Repurchase Option*: At any point prior to the Termination Date, Shaw shall have the right to repurchase the right to the Assigned Royalties from Assignee by paying to Assignee an amount equal to the total Assigned Royalties due under this Agreement minus the

total amount of Assigned Royalties Assignee has received as of the repurchase date ("Repurchase Amount"). Upon such payment to Assignee, Assignee shall terminate this Agreement and execute any necessary documents to assign, transfer, and convey the rights to the Assigned Royalties to Shaw.

c. *Delayed Repurchase Rights*: At any point after the date that is greater than 48 months after the Effective Date, Assignee shall provide Shaw 30 days' notice and opportunity to exercise the delayed repurchase option by paying the Repurchase Amount (the "Delayed Repurchase Amount"). In the event that Shaw does not exercise this delayed repurchase option, Assignee shall continue to receive the Assigned Royalties. The date of Assignee's actual receipt, if any, of the Assigned Royalties stated on Exhibit 1, the Early Repurchase Amount, or the Delayed Repurchase Amount shall be referred to as the "Termination Date."

4. **Termination of Assignment; Return of Excess Assigned Royalties**. If Assignee receives any Assigned Royalties after the Termination Date, then Assignee shall remit such Assigned Royalties to Shaw within ten (10) days of Assignee's receipt thereof. Likewise, if Assignor or Shaw receive any Assigned Royalties prior to the Effective Date, they shall remit such Assigned Royalties to Assignee within ten (10) days of receipt.

5. **Continuation of Publisher Affiliation Agreements by Shaw**.

a. Until the Termination Date, Shaw covenants and agrees that he: (i) will not voluntarily terminate Shaw's (or Assignor's on Shaw's behalf) affiliation or membership agreements with Shaw's publishers or labels (the "Affiliation Agreements"); (ii) will use his best efforts to avoid any involuntary termination of the Affiliation Agreements; (iii) shall not accept any advances or incur any expense or take any action that would diminish the Assigned Royalties payable to Assignee; and (iv) will register with his publishers and labels each and every musical works which, prior to the Termination Date, is commercially exploited or is approved for or licensed for commercial exploitation. In the event that the Affiliation Agreements expire under their own terms prior to Assignee receiving the Assigned Royalties, Shaw shall use his best efforts to renew such agreements and take all action necessary to ensure that Assignee receives the Assigned Royalties as provided herein.

b. In order to allow Assignee to track the Assigned Royalties and calculate the Excess Funds due to Shaw, until Assignee receives the Assigned Royalties, Shaw hereby agrees to provide to Assignee the log in credentials for Shaw's on-line account with his publishers and labels, if any. Shaw further agrees not to change the log in credentials until the Termination Date, and in the event that such credentials have to be changed (for security reasons), Shaw shall immediately provide the revised log in credentials to Assignee.

c. Until Assignee receives the Assigned Royalties, neither Assignor nor Shaw shall take any action to sell, transfer or assign Assignor's rights in and to the copyright(s) which generate the Assigned Royalties.

6. **Assignment**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs, executors and administrators. Neither party may assign any of its rights hereunder; provided, however, that Assignee may assign this Agreement or any of its rights hereunder to a third party.

7.     **Governing Law and Consent to Jurisdiction**.  This Agreement is governed by and shall be construed in accordance with the laws of the state of California, without regard to conflict of law principles.  If any legal action or other proceeding is brought for the enforcement of this Agreement or as a result of a breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs insured in such action or proceeding in addition to any other relief to which such party may be entitled.

8.     **Merger Clause**.   This Agreement is the entire agreement between the parties and supersedes any negotiations or oral statements made by either party.

Sound Royalties, LLC


By: _____          _____
Its: _____          S. Gregory Hays, Chapter 7 Trustee for the
                                             Bankruptcy Estate of Todd Anthony Shaw


Accepted and Agreed.



_____
Todd Anthony Shaw, Debtor

Page 4



Exhibit 1

**ASSIGNED ROYALTIES**

| | |
|---|---|
| Year 1 | $619,524.46 |
| Year 2 | $553,027.35 |
| Year 3 | $497,011.53 |
| Year 4 | $452,437.11 |



Schedule "A"

The musical works for which the royalties are assigned herein include (i) all musical works registered to Assignor's Publisher and Label Accounts (including, but not limited to those musical works set forth in the schedule below)



# Funding Instructions

I hereby request that the Assignment Price, and any Excess Funds I am due, as defined in the Royalty Assignment Agreement, be paid to me in the following manner. I further understand that the Assignment Price or any Excess Funds will not be paid to me until all terms contained in the Agreement have been satisfied.

Please select only one.

☐ By check via overnight mail to my address below:

> 1804 E 8TH ST # B
> Los Angeles, CA 90021

☐ By ACH / wire into my bank account. You **must** attach a voided check or deposit slip. **WARNING:** A bank wire or electronic fund transfer to a bank account may speed your access to the funds. However, if someone other than you (even a close family member) has access to the bank account you pick, THEY will be able to take YOUR money from your account. Assignee will pay into whatever account you designate on this form, but it is YOUR responsibility to ensure that the bank account you pick is secure.

| | |
|---|---|
| Name of bank | _____ |
| Exact Name on Bank Account: | _____ |
| Account Number: | _____ |
| Bank Routing/ABA Number: | _____ |
| Phone Number: | _____ |

Type of account:  ☐ Checking   ☐ Savings ☐ Other _____

_____
S. Gregory Hays, Chapter 7 Trustee for t
he Bankruptcy Estate of Todd Anthony Shaw

# FORM W-9 INSTRUCTIONS

Please note that you must provide the following information when filling out W-9 form:

**Individual or Business name**
**Federal tax classification** *(Individual/sole proprietor, Partnership, limited liability company etc.)*
**Address**
**Taxpayer identification number (SSN or EIN)**
**Signature**
**Date**

The W-9 form should be filled out by the person or entity that has the rights to receive royalties and is signing the contract.

**Example One:** Royalty rights belong to John Smith then W-9 form must be filled out by John Smith as an individual taxpayer and provide his SSN

**Example two:** Royalty rights belong to John Smith Music, LLC then W-9 form must be filled out by John Smith Music, LLC as a business taxpayer and provide EIN number.

*If the form is not filled out in its entirety this could cause a delay in the process*