**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>Todd Anthony Shaw,<br><br>Debtor. | CHAPTER 7<br><br>Case No. 09-61855<br><br>Honorable Barbara Ellis-Monro |

**DEBTOR'S EMERGENCY MOTION TO DISMISS**

Todd Anthony Shaw (the "**Debtor**"), by and through his undersigned attorneys, files this *Emergency Motion to Dismiss* (the "**Motion**"), in support of which he respectfully states as follows:

**PRELIMINARY STATEMENT**

As described further in his *Supplement to Objection to Sale Motion*, which is filed substantially contemporaneously herewith (the "**Objection Supplement**"),[1] via discussions with both Sound Royalties and the Trustee, the Debtor has arranged for Alternative Funding, which will provide sufficient funds for the Trustee to pay all remaining claimants in this case in full. Payment in full of all claims represents sufficient cause for dismissal of the Bankruptcy Case, which the Debtor respectfully requests, via this Motion.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Objection Supplement.

1

## JURISDICTION

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 151, 157(a) and (b), and 1334(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are 11 U.S.C. § 707(a), Fed. R. Bankr. P. 1017(e) and 9013, and LBR 9013-1.

## BACKGROUND

The factual background on this matter is incorporated herein, by reference, from the Objection Supplement, the Debtor's *Motion to Convert Debtor's Chapter 7 Case to a Case Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 290], the Debtor's *Objection to Sale Motion* [Dkt No. 293].

As described further in the Objection Supplement, the Debtor has arranged for the Alternative Funding, consisting of a tripartite agreement between him, the Trustee and Sound Royalties, pursuant to which (i) Sound Royalties will promptly transfer a sufficient amount of cash to the Trustee directly to pay all remaining claimants in this case in full; and (ii) the Trustee will assign to Sound Royalties certain royalty interests in the Shaw Music Catalogue sufficient to pay Sound Royalties back over a number of years.  Any funds not needed to pay back Sound Royalties will be distributed to the Debtor.  And the Debtor will otherwise retain all interests in the Shaw Music Catalogue.

Upon the Trustee's receipt of the funding from Sound Royalties, he will have sufficient funds to pay all remaining creditors in this case including all outstanding administrative expenses, in full, sooner rather than later (indeed sooner than the arrangement proposed in the Sale Motion), such that this case may be closed once and for all.

While the Debtor has shared the details of this Alternative Funding with the Trustee multiple times, to date the Trustee has refused to engage on it instead apparently putting the interests of entities like the proposed purchaser under the Sale Motion and the Trustee's broker ahead of estate beneficiaries like the Debtor.

## ARGUMENT

Section 707(a) of the Bankruptcy Code provides that, after notice and a hearing, a bankruptcy court may dismiss a Chapter 7 bankruptcy case "for cause." Three examples of "cause" are delineated by Section 707, however, "the statute's use of the term 'including'" when describing those examples "means that the enumerated causes are not exhaustive." *In re Lacrosse*, 244 B.R. 583, 587 (Bankr. M.D. Pa. 1999); *see also In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) ("The grounds that § 707(a) lists as providing 'cause' for dismissal are illustrative and not exhaustive."). Instead, dismissal for "cause" is also justified in other instances, including where a debtor can demonstrate that all claims will be "paid or otherwise satisfied in full." *In re Integrated Knowledge Mktg., Inc.*, No. BAP CC-07-1092-PABAK, 2007 WL 7540949, at *5 (B.A.P. 9th Cir. Nov. 6, 2007), *aff'd*, 433 F. App'x 566 (9th Cir. 2011). Indeed, in such circumstances there is "no practical reason for the bankruptcy case to continue." *Id*.

While it has sometimes been suggested that Chapter 7 cases may not be dismissed "***solely***  because a debtor may be able to pay creditor's claims in full," *In re Jackson*, 258 B.R. 272, 276 (Bankr. M.D. Fla. 2000)(emphasis added), that concept is meant as a shield for debtors, not as a sword against them. Specifically, ***creditors*** may not seek dismissal of a Chapter 7 case based solely on the ability of a debtor to pay claims. ***Debtors***, on the other hand, are permitted to seek dismissal on such grounds. *See, e.g., In re Aupperle*, 352 B.R. 43, 47 (Bankr. D.N.J. 2005) ("A

3

distinction may be drawn between a creditor or trustee who may not seek dismissal of a debtor's Chapter 7 case under § 707(a) on the ground that the debtor is able to repay her debts in whole or in part, and a debtor who seeks dismissal under § 707(a) on the ground that she will be able to resolve her debts…"); *see also In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007) (explaining that courts who did not note this creditor versus debtor distinction did so based on a misreading of Section 707(a)'s legislative history). Because the Debtor has arranged for the Alternative Funding to pay all claims here, sufficient cause exists to dismiss this case.

The Second Circuit's decision in *In re Smith*, 507 F.3d 64, in particular, is on all fours in that regard and provides sufficient justification for dismissal here. In that case, Smith filed for Chapter 7 bankruptcy, listing approximately $14,000 in debts. Smith's single potential asset was a personal injury claim which, everyone agreed, if successfully prosecuted, would lead to sufficient funds to pay all of Smith's creditors in full. A dispute arose, however, during the course of the bankruptcy over who should represent the bankruptcy estate in that personal injury action. That dispute ultimately led to the Chapter 7 trustee successfully moving for removal of Smith's preferred counsel. In order to regain control of that counsel decision, Smith arranged for third party financing to pay off all claimants, secured by a lien on the proceeds from the personal injury action, and on that basis moved to dismiss her case. The bankruptcy court denied Smith's motion, focusing in particular on why dismissal would not be in Smith's best interests since her counsel of choice had proven wanting in the bankruptcy court's estimation. The Second Circuit reversed for two reasons:

*__First__*, the court emphasized "that dismissal would clearly have benefitted Smith's creditors" finding "wholly without merit" any contention that dismissal would prejudice Smith's creditors even with the bankruptcy case already having gone on for several years. *Id*. at 74. In

particular, the court emphasized that, under "Smith's proposed arrangement, all of her creditors would be paid in full, including interest, immediately." *Id*. That would clearly be "in the best interest of Smith's creditors." *Id*.

***Second***, the court emphasized that the Chapter 7 trustee's and the bankruptcy court's views as to whether seeking dismissal was truly in Smith's best interests, given that, in so doing, Smith would be choosing to be represented by counsel whom they believed to be questionable, were wholly "unrelated to that aspect of the debtor's interest that is most relevant to the dismissal inquiry," namely, whether the debtor would be able to obtain "an effective fresh start." *Id*. at 75. While the trustee and bankruptcy court might have been correct that Smith would have been better off with other counsel, that was not their decision to make. Instead, under Smith's proposed financing arrangement, her "ability to secure an effective fresh start" would be unaffected no matter the counsel she chose – all of her debts were being paid in full via the alternative financing she had arranged. *Id.* That alone was sufficient to justify dismissal.

This case presents a parallel scenario which also necessitates dismissal.

***First***, regardless of the fact that this case has dragged on for years (not through the Debtor's own doing, he would note), the Debtor has now arranged for the Alternative Financing which, similar to the financing arranged for in *Smith,* will provide sufficient funds for the Trustee to pay all remaining creditors "in full, including interest, immediately." Further, the Alternative Funding is ***much more likely*** to lead to the prompt payment of all remaining claims, in full, than the transaction contemplated by the Sale Motion, due in large part to the numerous contingencies required to finalize that transaction, even after court approval has been obtained. Among other things, these contingencies include: (1) the need to finalize schedules which will list the actual assets being acquired, *see* Sale Motion at p. 5, n.3; (2) the need to finalize at least seven different

5

assignments, letters of direction and other similar agreements, including with third parties, *see* Proposed Reservoir APA, §§5.01(a)(i)-(vii); and (3) the need to negotiate confirmations with at least four different entities. *See* Proposed Reservoir APA § 5.01(e). That is to not even mention the possibility that certain third parties might have even more basic disagreements with the Trustee regarding the scope of his rights under the governing agreements, which, based on documents filed by the Trustee himself, they might already have. *See Trustee's Witness and Exhibit Lists* [Dkt. No. 313], Proposed Exhibit 14 (email from Universal noting that Universal "continues to disagree" with the Trustee's "interpretation" of certain "contractual provisions").

***Second***, in the *Smith* case, under Smith's proposed financing arrangement, all of her debts were being paid in full via the alternative financing she had arranged. That alone, according to the Second Circuit, was sufficient to justify dismissal, no matter the bankruptcy court's or the trustee's views on other ancillary issues such as the counsel who would, thereby, be pursuing her personal injury claim. So to here. During the July 11, 2023 preliminary hearing on the Trustee's Sale Motion, the Trustee's counsel repeatedly noted the Trustee's view that the proposed sale to Reservoir was a "good deal" and would make Debtor "independently wealthy." *See, e.g.*, 7/11/23 Hearing Tr. [Dkt. No. 312] at 7:4-17. That alone, in the Trustee's telling, provides justification for the sale, all other factors notwithstanding. As in *Smith*, however, not so. The Trustee's views on how the Debtor should or should not use the Shaw Music Catalogue are irrelevant – just as the trustee's views on the debtor's choice of counsel in *Smith* were irrelevant. This is based on the straightforward notion that the ***only*** relevant point in bankruptcy is whether creditors are being paid in full and whether the Debtor is securing an effective fresh

6

start. Via the Alternative Funding, they are, and he is. That is exactly the purpose of bankruptcy and that ends the matter.[2] Once the Alternative Funding is finalized, this case must be dismissed.

\*   \*   \*

In some cases, a debtor's request to dismiss his bankruptcy case may be denied, despite his promise to pay all creditors in full, for fear that that promise will not materialize once the bankruptcy case is dismissed. There is no such fear here, as the Debtor is not suggesting that his Chapter 7 case be dismissed ***until*** his creditors are paid in full via the additional funding that will be made available to the Trustee through the Alternative Funding. Indeed, as noted above, the Alternative Funding consists of a tripartite agreement which includes the Trustee himself – *i.e.*, the funds in question will not even flow through the Debtor but will be paid directly to the Trustee out of escrow. Thus, while the Debtor concedes that an outright dismissal of his Chapter 7 case might be inappropriate at the moment, the Court can conditionally grant this Motion on the condition that all remaining claims and expenses are first paid, which the Debtor expects can occur in the very near term. *See In re Kaur*, 510 B.R. 281, 289 (Bankr. E.D. Cal. 2014) (noting that courts "have dismissed chapter 7 cases conditioned on the debtor paying" outstanding expenses and listing several examples); *see also In re Gallman*, 6 B.R. 1, 2 (Bankr. N.D. Ga. 1980) (ordering that debtor's motion to dismiss be granted "upon a showing" that "the debtor has completed payment of" the expenses at issue).

---

[2] As an aside, the Trustee in any case confesses that he has very little knowledge of the music industry, or the rights being sold, and is clearly lacking a basic understanding of the negative implications that his unilateral decision to sell assets will have – *i.e.*, assets that represent a significant portion of the Debtor's life's work which he intends to support his family for multiple generations to come. But, in any case, it does not matter. Like in Smith, the only relevant factors are whether creditors are receiving all they are entitled to and whether Debtor is being afforded an effective fresh start.

7

**WHEREFORE**, the Debtor requests that this Court (i) enter an order dismissing this Chapter 7 case; and (ii) grant such other and further relief that the Court deems appropriate.

Dated: July 28, 2023                                BARNES & THORNBURG LLP

By: */s/ Christina M. Baugh*
Christina M. Baugh
Georgia Bar No. 241880
3340 Peachtree Rd N.E., Suite 2900
Atlanta, GA 30326
Telephone: (404) 264-4026
Email: CBaugh@btlaw.com

-and-

Aaron Gavant (*pro hac vice* admission pending)
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 214-4583
Facsimile: (312) 759-5646
E-mail: aaron.gavant@btlaw.com

PKA LAW

Tiffany R. Almy (admitted *pro hac vice*)
75 Gold Street, Suite 100
Brooklyn, NY 11201
Telephone: (646) 809-4341
tiffany@pkalaw.com

*Counsel for Debtor Todd Anthony Shaw*

8