UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| IN RE: | ) | Case No. 09-61855-BEM |
|---|---|---|
|  | ) |  |
| TODD ANTHONY SHAW, | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

**APPLICATION OF MCE MANAGEMENT, LLC FOR COMPENSATION**

MCE Management, LLC ("MCE") seeks entry of an order under section 328(a) of the Bankruptcy Code and Bankruptcy Rule 2016 deviating from pre-approved terms of employment and allowing compensation for services performed for the Trustee, which are calculated under the "lodestar" method in the amount of $317,262.50, an additional $56,632.11 in interest on those fees, and $177,713.48, representing 7% of the value of assets recovered for the estate, for total of $551,608.09, capped at $528,500, representing the amount that MCE would have received as a commission. In support of this application, MCE shows the Court as follows:

1

## Jurisdiction and Venue

1. This Application is core under 28 U.S.C. § 157(b)(2). This Court has jurisdiction to consider this Application under 28 U.S.C. § 1334(b). Venue for this Application is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## Background

2. On January 26, 2009, Todd Anthony Shaw (the "Debtor") filed this Chapter 7 bankruptcy case. S. Gregory Hays (the "Trustee") is the Debtor's Chapter 7 Trustee.

3. In his bankruptcy schedules, the Debtor failed to disclose extremely valuable music royalties and the associated income streams (the "Royalties"). *See First Interim Application of Rountree Leitman Klein & Geer LLC for Allowance of Compensation and Reimbursement of Expenses as Counsel for the Trustee* [Doc. 328] ("RKLG Fee App."), ¶ 10.

4. After the Trustee became aware of the Royalties owed by Sony Music Entertainment and Universal Music Group, Inc., the Trustee approached MCE's principal, Doug Colton, and requested that MCE act as a consultant to perform various services, including: to conduct due diligence on various property rights, income streams, statements, agreements, and assignments related to the Debtor's music catalog; to identify any other rights and income streams which may not have

been disclosed by the Debtor; to act as the broker for the Debtor's music catalog; and to help review and negotiate the terms of the various agreements and documents related to the review and potential sale of the catalog, and advise the Trustee regarding all of the above (collectively, the "MCE Services"). *See id*. at ¶¶ 12-15; *see also* Declaration of Doug Colton ("Colton Declaration"), ¶ 5.

5. Mr. Colton has deep expertise in music-related rights and income. He was previously President of Murrah Music Corporation, a highly successful music publishing company in Nashville, TN. *See id.*, ¶ 3. Additionally, though he was not employed as legal counsel to the estate, Mr. Colton is an attorney specialized in music publishing, copyright, and intellectual property law with the entertainment firm of Sukin Colton Law Association. *See id.*, ¶ 3. Mr. Colton has represented a diverse array of clients including Warner Chappell Music, the Estate of Elvis Presley, the Estate of Aretha Franklin, the Gershwins, numerous international music publishers, and individual songwriters and artists. *See id.*, ¶ 3. He has particular expertise in music catalog acquisitions and financing transactions and has represented various sellers, buyers, banks, and other interested-party clients in such transactions for over 25 years. *See id.*, ¶ 3. He has closed numerous catalog sales containing some of the world's most popular music. *See id.*, ¶ 3. In addition to Mr.

Colton, MCE employs highly specialized associates with a depth of experience in entertainment transactions. *See id.*, ¶ 4.

6. On March 16, 2021, the Trustee filed an application to employ MCE under an agreement (the "Agreement") to provide the MCE Services [Doc. No. 209] (the "Application to Employ"). A copy of the Agreement is attached as Exhibit "B" to the Application to Employ.

7. Under the terms of the Agreement, MCE was to provide the MCE Services and in exchange, the Trustee was to pay MCE a commission of 7% of the consideration paid for any sale. *See* Agreement, ¶¶ 1 and 3.

8. On March 24, 2021, the Court entered an order [Doc. No. 210] authorizing the Trustee to employ MCE under the Agreement.

9. After its engagement, MCE identified additional unscheduled Royalties owed by Broadcast Music, Inc. ("BMI") and SoundExchange, Inc. ("SoundExchange"). *See* RKLG Fee App., ¶ 16; and Colton Declaration, ¶ 7.

10. As explained in the Colton Declaration and detailed in Exhibit A to the Colton Declaration, the additional Royalty streams identified by MCE have already yielded $538,764 in additional revenue to the estate and have a current present value of approximately $2 million. *See* Colton Declaration ¶ 7.

11.  Far worse than simply failing to schedule the BMI and Sound Exchange Royalties, it appears as though the Debtor (or other entities acting at the Debtor's instruction) actively concealed these assets in a scheme to divert what the Trustee estimates could be more than $600,000.00 in post-petition Royalties. *See* RKLG Fee App., ¶ 17.

12.  Thanks to the specialized skill and diligent efforts of MCE, the Trustee secured a contract (the "Sale Agreement") to sell the Royalties (the "Sale") to Reservoir Media Management, Inc. (the "Purchaser"), "as is, where is," for $7,550,000.00 (the "Purchase Price"). *See* RKLG Fee App., ¶ 19; Colton Declaration, ¶ 8. The Purchase Price would have resulted in a $528,500 commission for MCE under the Agreement and millions to the estate that would have allowed the Trustee to make a 100% distribution to timely and untimely filed claims in this Case and would have resulted in a multi-million-dollar surplus. *See* RKLG Fee App., ¶ 22; Colton Declaration, ¶ 8.  Instead, the Debtor blew up the Sale. *See* RKLG Fee App., ¶ 21.

13.  Although Mr. Colton is not generally compensated on an hourly basis, he and the three paralegals employed by MCE do routinely keep their time records. *See* Colton Declaration, ¶ 9. As detailed in the narrative invoice attached as Exhibit B to the Colton Declaration, MCE's professionals devoted an estimated 639.5 hours

5

to the Trustee's engagement. *See id.*, ¶ 9. This work was performed by four professionals: Mr. Colton and three paralegals. *See id.*, ¶¶ 9-10. Mr. Colton has relied on his knowledge of the industry in consultation with other similar professionals to arrive at the rates for each professional detailed in the time summary below. *See id.*, ¶ 10. In all, the value for MCE's service based on the lodestar method (*i.e.*, rate charged multiplied by hours expended) equals $317,262.50:

| Timekeeper | Title | Hourly Rate | Hours | Fee |
|---|---|---|---|---|
| Maggie Downs | Paralegal | $275 | 105.25 | $28,943.75 |
| Becky Pommer Jones | Paralegal | $375 | 179.5 | $67,312.50 |
| Greg Beeckman | Paralegal | $475 | 179.75 | $85,381.25 |
| Doug Colton | Consultant | $775 | 175 | $135,625 |
| total | | | | $317,262.50 |

*See id.*, ¶ 10.

14. Of course, these rates would contemplate prompt payment. *See id.*, ¶ 11. Where, as here, payment is deferred, MCE would typically charge interest. *See id.*, ¶ 11. Applying a 10% annual interest rate, compounded monthly, to the invoices, results in an additional $56,632.11 in interest. *See id.*, ¶ 11 and Ex. C.

6

15. When the Debtor filed bankruptcy, the prospect for a distribution to unsecured creditors, much less a surplus, seemed remote. *See* RKLG Fee App., ¶ 9. The Trustee, with the aid of MCE, identified considerable assets and packaged them for sale. *See id.*, ¶ 19. Having sat silent for over a decade, the Debtor emerged and, on the last day to timely do so, objected to the Sale and moved to convert the case. [Doc. Nos. 290, 293.] As ably argued by the Trustee, the objection and the motion to convert were ill-founded. *See* RKLG Fee App., ¶ 21. Unfortunately, the issue would not come before the Court because, upon information and belief, the Debtor and those acting at his direction or on his behalf were acting behind the scenes to actively disrupt and undermine the Sale with threats and intimidation directed at the Purchaser. As a result, the Purchaser terminated the Sale Agreement in accordance with its terms on the eve of the hearing on the sale motion. *See* RKLG Fee App., ¶ 21; *see also* Colton Declaration, ¶ 12.

16. Now a Debtor, who has already profited from the misappropriation of estate funds, stands to profit from the uncompensated work of MCE as well. By killing the Sale, the Debtor deprived MCE a $528,500 commission. The assembled Royalties will pass to the Debtor after all claims are paid.

17. How could MCE have known, when it was engaged by the Trustee, that it might do all the hard work to produce a sale—including finding assets actively

concealed by the Debtor—only to have the long-dormant bad-faith Debtor re-emerge to thwart the deal? Fortunately, the Bankruptcy Code provides for such unforeseen circumstances.

## Legal Argument

18.  Where professionals are retained by a trustee under section 327 subject to a pre-approved compensation agreement, as the case is here, the Court may alter the pre-approved compensation arrangement "if 'such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing of such terms and conditions.'" *See In re Harman,* 2006 WL 6591823, *4 (Bankr. N.D. Ga. 2006) (citing section 328(a)); *see also In re Carter*, 2004 WL 5846718, *5 (Bankr. N.D. Ga. 2004) (allowing reasonable compensation to real estate broker where conversion of case to Chapter 13 mooted pending sale).

19.  For example, in *Carter*, the court approved the trustee's employment of a realtor under section 327(a) to market and sell the debtor's residence for a commission of 7% of the purchase price upon consummation of any sale. *See* 2004 WL 5846718 at *1. The realtor procured a purchaser, and the trustee entered a sale contract and filed a motion for court approval to sell the property. *Id*. However, a few days before the trustee filed the sale motion, the debtor moved to convert the case to Chapter 13. *Id.* The court granted the debtor's motion over the trustee's

8

objection, rendering the sale motion moot. *Id.* Nonetheless, the court allowed compensation to the realtor based on the time and effort spent, finding that the parties could not have anticipated the conversion. In reaching its decision, the court "balanced the equities" of the case and noted, among other things, that the debtor did not object to the initial application and "stood idly by" while the professional invested his time and efforts. *Id*. at *6 ("It would be unjust under these circumstances to allow the Debtor to benefit from the conversion of the case without payment of reasonable and equitable compensation to [the professional].").

20. In this case, it was not a Court-ordered conversion that mooted the sale; worse, it was the Debtor's frivolous effort to convert coupled with its strategy of harassment that ultimately scared off the Purchaser. This was after the Debtor stood by, silent, for over two years during which time the MCE Services were provided. Just as it was in *Carter*, here it would be unjust to allow the Debtor to benefit without payment of reasonable and equitable compensation to MCE.

21. In determining the reasonableness of compensation allowed under section 328(a), the *Carter* court looked to the twelve-factor *Johnson* test. *See id.* at *7 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717 (5th Cir. 1974)). The *Johnson* test, as modified in *Carter* to apply to non-legal services, looks at: "(1) The time and labor required; (2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the ... service properly; (4) The preclusion of other employment by the [professional] due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the [professional]; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; and, (12) Awards in similar cases." *Id*. The *Carter* court then applied the lodestar method to determine the reasonableness of the fee. *See id*.

22. Applying the relevant[1] modified *Johnson* factors to the instant case, as set forth below, it is clear that MCE's application is "reasonable."

    a. *Time and labor required:* The time and labor required were significant. During the course of MCE's engagement with the Trustee, MCE committed a total of 639.5 hours to this matter. *See* Colton Declaration, ¶¶ 9-10.

    b. *Novelty and difficulty of the questions*: Though not novel for MCE, the questions presented required skills well beyond the competencies of most bankruptcy practitioners.

---

[1] The sixth and seventh *Johnson* factors are not relevant to this application.

10

c. *Skills requisite to perform the services properly:* The issues handled by MCE require a high degree of specialized expertise in intellectual property rights in the entertainment industry.

d. *The preclusion of other employment*: Naturally, a commitment of the sort undertaken by MCE results in the exclusion of other opportunities.

e. *The customary fee*: As explained above, the rates for MCE's professionals reflect rates charged by similar professionals in the industry.

f. *Whether the fee is fixed or contingent*: Although the commission provided by the Agreement was necessarily contingent, it did not contemplate the unforeseen circumstances of this case, *i.e.*, a previously dormant debtor emerging to disrupt a sale with frivolous legal positions, threats, and intimidation.

g. *The amount involved and the results obtained*: Due to the efforts of MCE, the Trustee was able to locate previously unknown revenue streams and market test the value of the Royalties. As a result, a case that once appeared to offer no distribution to unsecured creditors will now result in a surplus to the uncooperative Debtor.

h. *The experience, reputation, and ability of the professionals*: MCE brought deep and significant industry specific know-how to bear.

i. *The "undesirability" of the case*: In hindsight, the undesirability of the representation is clear. Through hard work and with great expertise, MCE worked toward a highly beneficial result only to have its effort undermined by the Debtor.

j. *The nature and length of the professional relationship with the client*: MCE is not routinely involved with bankruptcies and has never worked for this Trustee. For one, this explains how MCE would not have foreseen the circumstance that disrupted the Sale. Moreover, MCE's willingness to serve in the employ of a trustee administering assets for a bankruptcy estate should not be penalized because an opportunistic debtor emerged from a decade's silence to chill the Sale.

k. *Awards in similar cases*: Though MCE cannot point to a similar case, MCE's requested fee is less than the commission it would have otherwise received. That proposed commission, which contemplated the work eventually performed by MCE, was approved by the Court. Similar commissions are approved routinely in this district.

23.    In addition to compensation under the lodestar method, MCE should also be compensated based on a percentage of the assets brought into the estate, namely the BMI and SoundExchange Royalties. As explained above, the additional Royalty streams identified by MCE have already yielded $538,764 in additional revenue to the estate and have a current present value of approximately $2 million. Applying the 7% commission to this asset yields an additional $177,713.48.

24.    The total of fees calculated under the lodestar method $317,262.50 plus interest $56,632.11 on those fees and the $177,713.48 for the location of additional income streams exceed the commission under the Agreement. MCE has capped its request at the amount of that commission. Accordingly, MCE requests compensation of $528,500.

WHEREFORE, Movant prays that the Court enter an order granting the Application, awarding MCE compensation of $528,500 under section 328(a), and granting such other and further relief as the Court deems just and proper.

This 17th day of January 2024.

                Respectfully submitted,

                SMITH, GAMBRELL & RUSSELL, LLP

                */s/ Michael F. Holbein*
                Michael F. Holbein
                Georgia Bar No. 360070
                1105 W Peachtree Street NE, Suite 1000
                Atlanta, Georgia 30309
                Telephone: 404-815-3607
                Facsimile: 404-685-6907
                Email: mholbein@sgrlaw.com
                *Attorneys for MCE Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, I electronically filed the foregoing **Application of MCE Management, LLC for Compensation** with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all attorneys of record.

*/s/ Michael F. Holbein*
Michael F. Holbein
Georgia Bar No. 360070