**IT IS ORDERED as set forth below:**

**Date: April 11, 2024**



_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 09-61855-BEM |
| TODD ANTHONY SHAW, | |
| Debtor. | CHAPTER 7 |

### O R D E R

**THIS MATTER** is before the Court on the *Application of MCE Management, LLC for Compensation* (the "Application") [Doc. 348], and Debtor's objection thereto. [Doc. 351]. MCE Management, LLC ("MCE"), seeks compensation in the amount of $528,000 for its services as a broker for the Chapter 7 Trustee of Debtor's bankruptcy estate. The Application came before the Court for hearing on February 20, 2024. Michael F. Holbein appeared for MCE, Aaron Gavant and Christina M. Baugh appeared for Debtor, Michael J. Bargar appeared for the Chapter 7 Trustee, and Lindsay P.S. Kolba appeared for United States Trustee.

### I. FACTS

Debtor is a musician who receives royalty income from his music catalog. Debtor filed this Chapter 7 case on January 26, 2009, and any rights or interests in the catalog created on

or before the filing became property of the bankruptcy estate. The case has remained open for more than a decade, with the majority of the royalties from the catalog going to a secured creditor whose claim was satisfied in 2019. [Doc. 323]. By the end of 2020, administrative claims had been paid current, priority claims and secured tax claims had been paid in full, and general unsecured creditors had received a 34% dividend by interim distributions.[1] [Id.]. Shortly thereafter, the Trustee determined that the best way to move forward was to sell the estate's interest in the catalog and obtained Court authorization to employ MCE for that purpose. [Docs. 209, 210]. The *Application for Approval of Employment of MCE Management LLC as Broker for Trustee* (the "Application to Employ"), filed on March 16, 2021, includes the following:

> 5. The professional services which MCE is to render include the securing of agreements between Trustee and third party financing sources for the sale or transfer of the catalog of rights or interests, to the extent created prior to the Petition Date, previously owned by Debtor and that are now property of the Estate. A true and correct copy of the engagement letter between Trustee and MCE is attached hereto as Exhibit "B." This engagement letter is conditioned upon and subject to the Court's approval of this application.
> …
>
> 7. Trustee shows that the MCE has agreed to perform brokerage services, subject to further application and order of the Court, as to the sale of the Estate's interest in various music rights, for a commission of seven percent (7%) of the selling price.
>
> 8. No fees or expenses shall be paid or reimbursed, respectively, to MCE absent an order from the Court under Section 330 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy.

[Doc. 209 at 2]. The engagement letter provides that "[Trustee] agrees to pay MCE for its services in connection with the sale or transfer of any portion of [Debtor's] Assets at the closing of such Transactions(s), in immediately available funds, a fee of seven percent (7%) …." [Id. at 7]. The letter further provides that MCE would be paid "following appropriate authority from the United

---

[1] At a hearing on July 31, 2023, counsel for the Trustee reported that the estate had been levied by the IRS in anticipation that there would be surplus funds, that the amount the IRS claimed to be owed had increased by $1.5 million, and that postpetition taxes exceeded $600,000.

States Bankruptcy Court" and that "[n]otwithstanding anything in this Agreement to the contrary, [Trustee] shall only have a duty to pay the Commission to MCE if, and only if, the Bankruptcy Court enters an order in the Bankruptcy Case authorizing [Trustee] to pay the Commission." [Id.].

The order granting the Application to Employ (the "Employment Order"), entered on March 24, 2021, states: "No compensation shall be paid to MCE until the Court has allowed such compensation in accordance with 11 U.S.C. §§ 330 and 331 and Fed. R. Bankr. P. 2016, after notice and a hearing of an appropriate application for compensation." [Doc. 210 at 2].

Over the course of MCE's two-year employment, MCE worked to find a buyer for Debtor's catalog. In the process of securing a buyer, MCE also uncovered royalty rights that Debtor failed to disclose in this case but continued to collect. According to the Application and the declaration of Doug Colton, the owner of MCE, the additional royalties yielded $538,764 for the estate and have a present value of $2 million. [Docs. 348 at 4; 349 at 3].

Eventually, MCE found a buyer who was willing to purchase the catalog for $7,550,000, an amount that would have satisfied all remaining claims in the case and provided a substantial surplus for Debtor.[2] Instead, in the final days before the closing, Debtor reappeared and objected to the sale of the catalog. Debtor had not participated in the case in some years—the last appearance having occurred over ten years before.[3] The sale subsequently fell through.

On January 17, 2024, MCE filed the "Application. The Application seeks fees of $317,262.50 for 639.5 hours expended, (a blended rate of $496.11 per hour), plus interest at 10% per annum of $56,632.11, plus $177,713.48 for locating the additional royalty streams,[4] capped at

---

[2] At this point it is unclear whether the surplus would go to Debtor or to the IRS pursuant to the levy filed in July 2023.

[3] Debtor's original attorney withdrew from representing Debtor in August 2009 [Docs. 48, 51]. There was no further activity by Debtor in the case until July 2023, when Debtor's current counsel first appeared to oppose the sale. [Doc. 289].

[4] $177,713.48 represents 7% of the $538,764 yielded thus far from the additional royalties discovered by MCE plus 7% of the $2 million present value of the additional royalty rights.

3

$528,000—the amount of commission MCE would have earned if the sale had closed. At the February 20, 2024 hearing, counsel for MCE stated that if the Court ruled based upon the record at the hearing and the record in the case, MCE would only request the lodestar amount[5]. Debtor objects to this compensation arguing that MCE was only to be compensated at the "closing" of the sale which did not occur. After considering the arguments of the parties and the legal authorities, the Court concludes that the Application should be approved to the extent of the lodestar amount.

## II. LAW ON PROFESSIONAL COMPENSATION

The Bankruptcy Code sets forth two standards for approving professional compensation. Section 328 allows the Court to preapprove certain types of compensation, including contingency fees. 11 U.S.C. § 328(a). However, after the services are complete, if the terms and conditions of the preapproved compensation "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions," the Court may alter the compensation. *Id.* If the terms of compensation are not preapproved, then under § 330, the Court will conduct a post hoc review of the compensation for reasonableness, which requires "that the court consider the nature, extent, and value of the services rendered in determining the amount of compensation" and allows the Court to reduce fees if warranted by the review. *In re Dan River, Inc.*, No. 04-10990-WHD, 2005 WL 6486371, at *4 (Bankr. N.D. Ga. Sept. 30, 2005) (Drake, J.) (citing 11 U.S.C. § 330(a)). Under this framework, "Section 330's reasonableness standard does not supplant Section 328(a) and give the judge free reign to void a previously authorized employment agreement for a percentage fee" in the absence of a showing of improvidence. *In re Chewning & Frey Sec., Inc.*, 328 B.R. 899, 911 (Bankr. N.D. Ga. 2005) (Mullins, J.) (citations and internal quotation marks omitted).

---

[5] Debtor's counsel also advised the Court that he believed the Court could rule on the Application and Debtor's objection without holding a further evidentiary hearing.

> The differences between §§ 328 and 330 affect the timing and process of the court's review of fees. For instance, under § 328, the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under § 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement.

*Miller Buckfire & Co., LLC v. Citation Corp.* (*In re Citation Corp.*), 493 F.3d 1313, 1318 (11th Cir. 2007).

In determining whether compensation has been preapproved, this Court looks to the totality of the circumstances, including "whether section 330 or 328 were cited in the application or the order, whether language in the order reserved the right to review fees for reasonableness, whether the order discussed the terms of the compensation, and whether the order required the professional to submit an application and time records." *In re Harman*, No. 04-17195-WHD, 2006 WL 6591823, at *5 (Bankr. N.D. Ga. Oct. 12, 2006) (Drake, J.); *Dan River*, 2005 WL 6486371, at *5 (reviewing the approaches taken by various circuit courts and adopting the totality of the circumstances test); *see also In re Smart World Techs., LLC*, 552 F.3d 228, 233 (2d Cir. 2009) (adopting totality of the circumstances test, "including whether the professional's application, or the court's order, referenced section 328(a), and whether the court evaluated the propriety of the fee arrangement before granting final, and not merely preliminary, approval").

### III. ANALYSIS

Debtor argues that this Court approved MCE's compensation pursuant to the terms of the original application, which predicates payment on a closing of a sale. These pre-approved terms, Debtor contends, cannot be altered unless those terms prove to have been "improvident in light of developments not capable of being anticipated at the time of fixing of such terms and

5

conditions," pursuant to § 328. [Doc. 351, pg. 5]. However, the totality of the circumstances shows that MCE's compensation was not preapproved, but was subject to review under § 330.

Here, neither the Application to Employ nor the Employment Order mention § 328, but both documents cite § 330. The Application to Employ states that MCE will receive "a commission of seven percent (7%) of the selling price" of the estate's interest in the catalog and states that "[n]o fees or expenses shall be paid or reimbursed, respectively, to MCE absent an order from the Court under Section 330[.]" [Doc. 209 at 2]. The Employment Order states that "[n]o compensation shall be paid to MCE until the Court has allowed such compensation in accordance with 11 U.S.C. §§ 330 … after notice and a hearing of an appropriate application for compensation." [Doc. 210 at 2].

The Court reviewed the Application to Employ for compliance with § 327 and Federal Rule of Bankruptcy Procedure 2014 according to its routine procedures, and finding it in compliance, approved the Application to Employ without a hearing but subject to a 21-day objection period. The Application to Employ and the Employment Order were both served on Debtor.[6] [Docs. 209, 213]. No objections were filed, and the Court never had reason to consider preapproval of the compensation arrangement under § 328. *See Dan River*, 2005 WL 6486371, at *5 (the totality of the circumstances test recognizes "that the default rule should be that fees are subject to review under section 330, [and] something more than the mere reference to a compensation agreement within the employment application must be required to alter that default rule").

---

[6] The Certificate of Notice issued by the Bankruptcy Noticing Center on March 26, 2021, shows that the Employment Order was mailed to Debtor's address of record but indicates that the address was "identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately." [Doc. 213 at 4].

6

When courts have found that § 328 applies, it has usually been specifically invoked by one or more of the applicant, an objecting party, or the court. *Smart World Techs*., 552 F.3d at 233-4 (employment application and objection to employment both referenced § 328, and in approving application, court indicated that § 330 did not apply); *Dan River,* 2005 WL 6486371, at *6-7 (application sought employment under § 328; after an objection, the terms of employment were altered and memorialized in the final order, which also said compensation was subject to § 330; court found the reference to § 330 indicated that a fee application would be filed before the professional could be paid, not that fees would be reviewed under § 330). However, even in the absence of express reference to § 328, the totality of the circumstances can show that the court did preapprove compensation. *Harman*, 2006 WL 6591823, at *5 (although neither the application nor the order cited § 328, both showed an intent to preapprove 10% realtor commission; the application requested a 10% commission for finding a purchaser and requested that the realtor need not file a fee application to be paid; the order approved the application in all respects, provided that commission would be approved in connection with approving the sale, and did not reserve the right to review the commission for reasonableness).

The Court finds that this case is more like *Citation Corp*. and *Chewning & Frey*. In *Citation Corp.*, employment of an investment banker was approved under a flat-fee agreement. The parties sought approval of the employment under § 328 but, over the express objection of the parties, the order approving employment reserved the court's right to review the fees under § 330. 493 F.3d at 1319. When the investment banker subsequently sought payment of its entire flat fee, the bankruptcy court reviewed the fee for reasonableness, and awarded a lesser amount. On appeal, Eleventh Circuit found that the fee was not preapproved and the bankruptcy court did not err in reviewing the fees under § 330. *Id.*

7

In *Chewning & Frey*, special counsel was employed by the trustee on a contingency fee basis, but neither § 328 nor § 330 was mentioned in the application to employ or the order approving employment. 32 B.R. at 907. However, the order provided that "payment of compensation … is subject to allowance by the Court …." *Id.* Based on this language, the court determined that it had "reserved the right to approve the fees" under § 330. *Id.* at 911. While the court "may have approved the employment of Special Counsel, it did not approve the contingency fee pursuant to section 328." *Id.* at 912. Additionally, the trustee had not requested retention under § 328, and neither the trustee nor the professional argued that the order established the fee arrangement under § 328. *Id.* Therefore, based on the totality of the circumstances, the fee was subject to review for reasonableness under § 330.

As noted above, in this case the Application to Employ did not seek preapproval of MCE's fee and the Court did not review or grant the Application to Employ in the context of preapproving fees. Accordingly, the Court concludes that based on the totality of the circumstances, § 330 is the applicable standard to review MCE's Application.

Section 330(a) allows a bankruptcy court to award "reasonable compensation for actual, necessary services rendered by the ... professional person ...." 11 U.S.C. § 330(a)(1)(A). "In determining attorney's fees, a judge must 1) determine the nature and extent of the services rendered; 2) determine the value of those services; and 3) consider the factors laid out in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974) and explain how they affect the award." *Grant v. George Schumann Tire & Battery Co*., 908 F.2d 874, 877-78 (11th Cir. 1990) (internal footnotes omitted). Because the statutory factors focus on the time spent on the services, "[t]he lodestar method is one way, but certainty not the only way, to ensure every unit of the

8

professional's work is valuable to the completion of the [bankruptcy] case." *Citation Corp*., 493 F.3d at 1320.

Section 330 sets forth the following factors for courts to consider in determining whether the compensation sought is reasonable:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The *Johnson* factors are similar, but broader than the statutory factors, as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the service properly; (4) the preclusion of other employment by the professional due to acceptance of a case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the professional's services; (9) the experience, reputation and ability of the professional; (10) the desirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 48 F.2d at 717-18. The burden is on the professional seeking compensation to prove the requested compensation is reasonable. *In re NRCT, LLC*, No. 15-58444-WLH, 2021 WL 1431844, at *9 (Bankr. N.D. Ga. Apr. 15, 2021) (Hagenau, J.).

The Colton Declaration is sufficient to establish that the hourly fees requested by MCE are reasonable. The work required—selling rights to a music catalog—is unusual for this Court, but Mr. Colton has 25 years of specialized experience in the area. His declaration states that while MCE usually works on commission, the employees routinely keep time records, and that the hourly rates assigned to the employees ($275 to $475 for paralegals and $750 for Mr. Colton) are based on Mr. Colton's knowledge of the industry. Nothing in the timesheets appears unreasonable in terms of services performed or time spent on the services. Even though no sale was completed, MCE's services benefitted the estate by revealing previously undisclosed royalty streams. Furthermore, at the February 20, 2024, hearing, counsel for the Chapter 7 Trustee reported that MCE did an outstanding job and had no opposition to MCE being paid on a lodestar basis. Counsel for MCE represented that the United States Trustee, who was represented at the hearing, did not oppose the lodestar request. Additionally, Debtor did not raise any objection to the amount of time MCE spent, the rate MCE charged, the reputation or ability of MCE, or other factors relevant under the § 330 analysis that have not already been addressed. Accordingly, the Court finds that MCE's request for lodestar compensation meets the requirements of § 330 and will be approved in the amount of $317,262.50.

Although it is not necessary to resolve the issues raised by the Application as revised at the hearing by counsel for MCE, the Court notes that even if the correct inquiry were under § 328, there may be sufficient evidence to meet its higher burden. Under § 328, a Court may only amend the agreed-upon compensation if the Court later finds that such terms would be "improvident" in light of events unable to be anticipated at the time of the agreement. Courts have distinguished between events that the parties failed to anticipate, which do not meet the standard,

and those that are incapable of anticipation, which do meet the standard. *See In re ASARCO, L.L.C.*, 702 F.3d 250, 258 (5th Cir. 2012); *Smart World Techs.*, 552 F.3d at 234-35 (2d Cir. 2009).

The debtor's prior behavior in the case can create the foundation for what can or cannot be "anticipated." *Harman*, 2006 WL 6591823, at *7. In *Harman*, which also involved a broker seeking compensation for a sale of property that fell through, the court concluded that because there were no "facts unknown or not capable of being anticipated at the time" the terms of the employment agreement were fixed, and because the evidence suggested that "at the time the Trustee employed the Movant, the Movant was fully aware that the Debtor was not likely to cooperate with the Trustee in his efforts to sell the property," the Debtor's continued recalcitrance in the sale of the property was not "unable" to be anticipated. *Id.* The inverse is true here. Where Debtor has been dormant for more than a decade, his sudden reappearance to oppose the sale may satisfy the incapable of being anticipated standard. However, because MCE has limited its request to the amount claimed based upon the lodestar analysis the Court need not hold a further hearing to determine whether Debtor's reappearance satisfied the § 328 standard. Accordingly, it is

ORDERED that the Application is approved in the amount of $317,262.50, and the Trustee is authorized to pay that amout to MCE.

**END OF ORDER**

**Distribution List**

Todd Anthony Shaw
1010 Forest Overlook Drive
Atlanta, GA 30331

Christina M Baugh
Barnes & Thornburg LLP
Suite 2900
3340 Peachtree Road NE
Atlanta, GA 30326

Aaron Gavant
Barnes & Thornburg LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road NW
Atlanta, GA 30305-2153

Michael J. Bargar
Rountree Leitman Klein & Geer LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329

Martin P. Ochs
Office of the U. S. Trustee
362 Richard Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Lindsay P.S. Kolba
Office of the U. S. Trustee
362 Richard Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Michael F. Holbein
Smith, Gambrell & Russell, LLP
1105 West Peachtree St., N.E.
Suite 1000
Atlanta, GA 30309